THE DELAWARE, LACKAWANNA & WESTERN RAILROAD
COMPANY
v.
DAVID G. THAYER, FOR USE, ETC.

*Agency—Railroad—Rebates of Freight Charges—Evidence.*

1.   A principal has the right to come forward and take the benefit of a contract entered into by his agent in his own name for the former's benefit; but the contract, which an unknown principal may assume and claim the benefit of, is the whole contract made and not a part of it.

2.   When the principal discloses himself, he comes to light charged with all that he has received from his agent, as well as with the acts of the agent with third parties.

3.   Under an arrangement with a railroad company for rebates, the same covering a certain number of cars, such rebates need not be paid until the full number of cars contracted for have been used in shipments.

4.   In an action brought to recover rebates of freight charges upon certain shipments of grain, this court holds that under the evidence as to the manner in which the payments of freight and rebates were made and the accounts kept, that the judgment for the plaintiff can not stand.

[Opinion filed July 23, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

This was an action of assumpsit by David G. Thayer, for the use of the Metropolitan National Bank, against appellant, to recover rebates upon freight charges on certain shipments of grain from Chicago to New York City, made by Thayer & Co. during the early part of the year 1886.

Thayer, doing business as Thayer & Co., was a merchant in Chicago, who shipped grain to Story & Co., of New York City, for sale by them as commission merchants.

Story & Co. made arrangements with appellant for rebates, the arrangement covering so many cars, in some instances running up as high as 500 cars; the arrangements were not made with special reference to any consignor or consignment; the

railroad company knew and recognized no one in the transaction but Story & Co., and paid the rebates to them without reference to who the shippers were. Story & Co. allowed shippers to them, in their accounts with them, the benefit of such rebates. From time to time they informed Thayer & Co. what rebates would be allowed. Story & Co. having the right to rebate upon a large number of cars, divided them among their customers.

The custom was for Story & Co. to pay to the defendant the full freight for shipments and afterward receive from it the amount of rebates due them upon the various shipments, the rebates on grain of the various shippers being lumped together in the check.

Thayer failed, and being largely indebted to the Metropolitan National Bank, made to it the following assignment:

"Chicago, 4-1-'86.

"For value recd. we hereby assign and transfer to the Metropolitan National Bank, of Chicago, all rebates due us from the Delaware, Lackawanna & Western R. R. Co. for shipments of grain made to New York consigned on order, notify W. H. Story & Co., including all shipments to March 31st, '86, inclusive, memorandum hereto attached.

"THAYER & Co."

The bank brought this suit against appellant in Chicago, and Story & Co. sued it in New York to recover the rebates due upon grain shipped by Thayer to Story & Co.

Appellant, when so sued, had in its hands some $4,000, due, as it claimed, to Story & Co. for rebates, which, by reference to the car numbers, it appears was on account of grain shipped by Thayer.

Messrs. GREGORY, BOOTH & HARLAN, for appellant.

Messrs. GEORGE BASS and H. H. MARTIN, for appellee.

The decisions of our own Supreme Court show that such rebate arrangements are valid at common law. R. R. Co. v. Elliott, 76 Ill. 67; R. R. Co. v. Coal Co., 79 Ill. 121; R. R. Co. v. People, 67 Ill. 11.

In R. R. v. Elliott, 76 Ill. 67, the plaintiff made an agreement with a railroad company, whereby he was to be allowed a rebate of five and a half cents per hundred pounds, from eighty and a half cents per hundred, which was the regular rate.

In an action to recover the rebate, the contract was held valid and the plaintiff entitled to recover. Although the court discussed the question as to whether the contract was in violation of the then railroad statute, it is perfectly obvious that the decision necessarily involved a holding that the contract was good at common law.

The court said: "We do not understand the contract is at all in violation of the statute to prevent unjust discriminations in charges by railroad carriers. The contract was to carry the grain at the customary rates. The rebate in the charges was a matter of private agreement between the carrier and the shipper."

In R. R. v. Coal Co., 79 Ill. 121 (1875), the purchaser of a railroad agreed to carry certain freight for the seller at certain stipulated rates, viz., $3 per car, the regular rate being $9 per car. The action was brought to recover back the difference between the agreed rate and the regular rate, which had been paid under circumstances not amounting to a voluntary payment.

After the agreement had been entered into, the General Assembly passed an act to forbid unjust discrimination. This act, the court held, did not invalidate the prior contract, and they enforced it.

Of course, this decision necessarily involved holding that the contract was valid at common law, and indeed the court expressly state that it was so valid.

The court said: "This act of the General Assembly was not designed to reach such a case as this, where a contract existed, prior to the passage of the act, to carry on certain terms. We do not think the law was intended to interfere with contracts to abrogate them. It was not intended by the General Assembly, by this law, to visit a railroad company with heavy penalties, which had, prior to the enactment,

entered into a valid contract with parties for the transportation of freight at a less rate than the general public was required to pay. * * * The true ground on which to place the case is, that the act against discriminations was not intended to annul contracts fairly made prior to its passage.".

The court said, in conclusion: "On the whole case, we are of opinion appellees have maintained their right to recover back the excess paid for carrying their coal, and affirm the judgment of the Superior Court."

And in R. R. Co. v. People, 67 Ill. 11 (1873), it was held that discrimination in rates was not, at common law, necessarily unjust discrimination, but that the question was one to be determined by evidence (see p. 27 of report) ; and that a statute making inequality in rates conclusive evidence of unjust discrimination was unconstitutional.

In R. R. Co. v. Ervin, 118 Ill. 250, *infra*, the Elliott case, *supra*, was referred to at length and recognized as law. (See quotations, *infra*, from opinion in 118 Ill. 250.)

And the authority of the above Illinois cases has been, in other States, recognized and fully approved, and applied to cases similar to the case at bar. See quotations *infra*, from the opinions in the following cases: Ry. Co. v. Closser, 26 North East. Rep. 159, *infra;* Bayles v. Ry. Co., 13 Col. 181, *infra;* Christie v. Ry. Co., 94 Mo. 452, *infra.*

Counsel cite five decisions of our Supreme Court as holding, that "by the common law of this State, such discriminations are unlawful, and contracts made to secure them can not be enforced," viz.: Vincent v. R. R. Co. 49 Ill. 33; Ry. Co. v. People, 56 Ill. 365; Ry. Co. v. People, 67 Ill. 11; R. R. Co. v. Ervin, 118 Ill. 250; R. R. Co. v. People, 121 Ill. 304.

Not one of these cases is in conflict with the Illinois law, as laid down in the Illinois cases already referred to by us, or has any tendency to show that the rebate agreements here involved were illegal.

All that the case of Vincent v. R. R., 49 Ill. 33 (1868), decides is, that under section 22 of the act of 1867, as to "warehouses," railroad companies were positively prohibited from delivering grain into any warehouse, other than that to

which it was consigned, without the consent of the owner or consignee, or from exacting an additional charge of $5 per car for delivery to the warehouse to which it was consigned; and that a consignee could, by injunction, restrain the company from making such delivery to another warehouse without his consent, or from exacting such additional charge for delivery to his own warehouse. The court seem also to have been of opinion that the rule was the same, independently of the statute, *i. e.*, that at common law the carrier was bound to make a delivery to the consignee personally; and that although this common law rule had been relaxed as to railroad companies, so far as to permit them to deliver freight into their own warehouses, yet, in view of the general custom in Chicago, shown by the evidence, of delivering grain at elevators to which it was consigned, the company was bound to make such delivery, and could not make an extra charge for the service.

The authorities outside this State are in accord with the Illinois cases referred to, and show that the rebate arrangements here involved are valid.

We refer to the following authorities: 2 Rorer on R. R., 1375; Ry. Co. v. Clossen, 26 N. E. Rep. 159; Bayles v. R. R., 13 Col. 181; Stewart v. R. R., 38 N. J. L. 505; Christie v. Ry. Co., 94 Mo. 452; McNees v. Ry. Co., 22 Mo. App. 224; Ex parte Benson, 18 S. Car. 38; Avinger v. Ry. Co., 29 S. Car. 265; R. R. Co. v. Gage, 12 Gray, 393; Spofford v. R. R., 128 Mass. 326; Johnson v. R. R., 16 Fla. 623; Menacho v. Ward, 27 F. R. 529; Cowdrey v. R. R., 1 Wood, 331; U. S. v. D. L. & W., 40 Am. & Eng. R. R. Cas.; R. R. v. Rust, 9 Am. & Eng. R. R. Cas. 123.

WATERMAN, J. The Metropolitan National Bank, for whose use this proceeding was, contends that Story & Co., in making the arrangements for rebates with the railroad company, acted as the agents of Thayer, and that he, although unknown to the railroad, had a right, as such principal, to at any time come forward and claim the benefit of the transaction.

The right of a principal to come forward and take the benefit of a contract made by his agent in the name of the

D., L. & W. R. R. Co. v. Thayer.

agent can not be questioned. If Thayer was, as the Superior Court has found, the principal, and Story & Co., notwithstanding their insistance that the contract was theirs alone, were really in this matter acting as his agents, then he had a right to reveal his position to the defendant and demand that it pay to him whatever was, under the arrangement, due. The principal in such case steps into the shoes of the agent and assumes all the burdens to which the agent is subject; the rights of the other contracting party can not be and are not affected by the disclosure of the before unknown principal.

In the present case a dispute exists between the alleged principal and the agent. Story & Co., whom the bank insists were the agents of Thayer, repudiate such position and declare that they, and they alone, were principals in the arrangements. The contracts as made were not for any particular shipper or shipment; they were for round numbers of cars divided among the customers of Story & Co. as they saw fit.

Manifestly, Thayer never authorized Story & Co. to make such a contract as this; he had no interest in the shipment of grain to Story & Co. by other parties; and there is nothing in the record to show that he ever had or felt any interest in the freight upon any grain save his own.

The contract, which an unknown principal may assume and claim the benefit of, is the contract made, and not a part of it. Mechem on Agency, Sec. 773; Rosevelt v. Doherty, 129 Mass. 301.

We do not agree with counsel for appellee in their suggestion that it does not appear that shipments were made by other parties than Thayer.

The witnesses called by appellee speak repeatedly of rebates due upon grain sent by other shippers, and the railroad officials speak of the trouble of separating the rebates on the grain shipped by Thayer from that forwarded by others.

The arrangement as stated by the witnesses for appellee was, in round numbers, for the benefit of Story & Co. Under such agreement, the defendant would not be bound to pay rebates until the full number of cars contracted for had been used in shipments.

While it may be the case that the defendant did not insist upon such course, yet such was its right, and the demand against it for rebates can not be split up into as many claims as there were cars or shippers.

The record in this case fails to disclose that Thayer ever shipped to Story & Co. cars in accordance with any contract they made, or ever was entitled to the entire amount due under any contract.

Story & Co. in the first instance paid the full freight to the defendant; for such advance they had as factors a claim upon the rebates, having priority over that of Thayer even though he should be considered the principal in the contract as to rebates; if Story & Co. had, prior to the assignment by him, paid such rebate to Thayer, then Thayer had, when he made the assignment, no claim to assign; whether principal or not, he would not be entitled to receive from his agent the full amount due and then recover the same thing from the defendant.

When the principal discloses himself, he comes to light charged with all that he has received from his agent, as well as with the acts of the agent with third parties.

It did not appear in this case that as between Story & Co. and Thayer, anything was due to Thayer, while there was evidence tending to show that but a small amount, if any, thing, was due. We therefore think that the court should, under the evidence as to the manner in which the payments of freight and rebates were made and the accounts kept, have held as requested in the seventh and eighth propositions of law requested of it by appellant.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*