**BRUNSWICK LEASING CORPORATION, a Pennsylvania corporation, Plaintiff–Appellee, Cross–Appellant,**

v.

**WISCONSIN CENTRAL, LIMITED, an Illinois corporation, Defendant–Appellant, Cross–Appellee.**

Nos. 96–3614, 96–3731.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1997.

Decided Feb. 3, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied March 9, 1998.

---

· Douglas J. Bank, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Joel S. Siegel (argued), Horvath & Lieber, Chicago, IL, for Brunswick Leasing Corporation.

James A. Smith, Keck, Mahin & Cate, Chicago, IL, A. Benjamin Goldgar, Office of the Attorney General, Civil Appellate Division, Chicago, IL, David E. Schaper, Roadmaster Corp., Olney, IL, for ITSI Management Services Corporation.

James A. Smith, Keck, Mahin & Cate, Chicago, IL, A. Benjamin Goldgar, Office of the Attorney General, Civil Appellate Division, Chicago, IL, Cristofer E. Lord, Alan S. Farnell (argued), Chicago, IL, for Wisconsin Central Limited in No. 96–3731.

James A. Smith, Keck, Mahin & Cate, Chicago, IL, Cristofer E. Lord, Alan S. Farnell (argued), Chicago, IL, David E. Schaper, Roadmaster Corp., Olney, IL, for Wisconsin Central Limited in No. 96–3614.

Before WOOD, JR., MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Brunswick Leasing Corporation, a Pennsylvania corporation with one shareholder, owned some 350 "piggyback" semitrailers. Brunswick, as well as 34 other trailer owners, retained ITSI Management Services to manage the trailers by leasing them to railroads for transporting freight. ITSI's primary customer was Wisconsin Central, who made lease payments to ITSI and ITSI in turn paid Brunswick and the other owners an agreed amount. When ITSI and Brunswick's relationship ended after a dispute, Brunswick asserted its ownership in its trailers and demanded that Wisconsin Central make its payments directly to Brunswick rather than ITSI. When Wisconsin Central refused, Brunswick sued ITSI and Wisconsin Central to enjoin Wisconsin Central from making further lease payments to ITSI, and for money damages against both. Following protracted proceedings before two judges, the district court awarded Brunswick $240,-000 after first crediting $160,000 to Wisconsin Central for repair bills paid. ITSI was dissolved and is out of the case. Wisconsin Central and Brunswick appeal and crossappeal. We reverse the district court in favor of Wisconsin Central.

## I. Background

In approximately February 1987, Brunswick Leasing Corporation owned about 350 trailers suitable for intermodal transport on rail cars.[1] Brunswick's president and sole shareholder was Harry Shulman. Brunswick had no other employees and, as far as appears on this record, no assets other than the trailers. Shulman, apparently having no expertise in railroads or managing intermodal trailers, contracted with defendant ITSI Management Services Corp.,[2] which was in the business of managing such trailers on behalf of their owners. (We refer to "owners" for convenience, but the record indicates that not all parties who provided trailers to ITSI owned them; some, for instance, leased the trailers from another.) In March 1987, Shulman executed a power of attorney in favor of ITSI to enter into agreements regarding the management of the trailers.

ITSI generated income from such trailers by providing them to a railroad, which in turn gave them to shippers. The railroad collected fees from the shippers, took its share of the revenue, and passed the rest onto ITSI, which then paid the owners their respective shares. When Brunswick first sent its trailers to ITSI in the spring of 1987, ITSI placed them in service with Iowa Interstate Railroad Ltd. For a while, all went well: Iowa Interstate paid ITSI and then ITSI paid the owners including Brunswick.

In the summer of 1987, while Brunswick's trailers were still in service with Iowa Interstate, defendant Wisconsin Central began as a start-up railroad. On August 5, 1987, Wisconsin Central and ITSI executed a "Trailer Use Agreement." This agreement was a requirements contract under which ITSI would supply to Wisconsin Central all the trailers for intermodal transport that it needed to the limit of ITSI's ability to get such trailers. All of the trailers that ITSI would provide to Wisconsin Central would bear Wisconsin Central's markings. The parties assumed that the majority of the income would be generated by fees that Wisconsin Central would receive from other railroads for their use of the trailers bearing Wisconsin Central's markings. Wisconsin Central would collect the fees earned on the trailers, deduct a $0.25 per trailer per day "royalty," and pay the remainder to ITSI. From this amount, ITSI was required to pay for various expenses, the most important of which were the so-called "owners repairs."

1. Intermodal transportation has become a common means of transporting goods. Rather than loading and unloading the goods numerous times as they are transferred between various means of transport (such as trucks, trains, and ships), the goods are put in a trailer or container—which is a trailersized box—and then the trailer or container as a whole is transferred between the trucks, trains, or ships. Thus the goods themselves are only loaded at their initial starting point and only unloaded at their final destination.

2. ITSI, although a defendant below, is now defunct and not a part of this appeal.

Wisconsin Central negotiated various "interchange agreements" with other railroads. These agreements controlled the interchange of intermodal equipment (such as trailers) between railroads. The contracts were governed by the interchange rules of the American Association of Railroads. The rules and agreements required that the entity whose marking was on the trailer, the "owner," would be responsible to pay for "owners repairs" done by another railroad while the trailer was in the other railroad's possession. These "owners repairs" were things such as fixing brakes and lights that did not work—repairs that could not wait until the trailer returned to the "owner's" possession. The Trailer Use Agreement required ITSI to pay for these "owners repairs," and ITSI also had to perform various management tasks related to the trailers, such as tracking their locations.

Iowa Interstate eventually suffered financial problems and was unable to pay its bills. ITSI decided to move Brunswick-owned trailers out of service with Iowa Interstate and into service with Wisconsin Central. It did so for the first time in the spring of 1988. In June 1988, ITSI wrote Brunswick a lengthy letter explaining why ITSI had decided to put Brunswick's trailers into service with Wisconsin Central. The letter stated that ITSI had put the trailers into operation with Wisconsin Central "on [Brunswick's] behalf," and the letter discusses Wisconsin Central at length.

When ITSI put Brunswick's trailers into service with Wisconsin Central, Brunswick was only one of about 35 entities whose trailers ITSI was supplying to Wisconsin Central, although Brunswick had the single largest number of trailers among those 35. Brunswick's 350 trailers made up about 45% of the total that ITSI supplied to Wisconsin Central.

But Wisconsin Central and Brunswick eventually had problems in their respective relationships with ITSI. Wisconsin Central's difficulty was that ITSI often failed to pay promptly for the "owners repairs," and other railroads would look to Wisconsin Central for payment. Although ITSI regularly made its monthly payments to Brunswick, Brunswick disputed various deductions that ITSI took from the income stream. ITSI claimed that they were valid expenses and Brunswick believed they were amounts that should have been taken from the fees it paid to ITSI for managing the trailers.

On November 14, 1989, Richard Leader, ITSI's president, met with Shulman to resolve the dispute regarding the charges that ITSI had deducted. Leader told Shulman that ITSI and Brunswick had to enter into a written agreement governing their relationship. Leader proffered ITSI's standard written Management Agreement, but Shulman refused to sign it or any other agreement. (In its answer to Brunswick's complaint, ITSI pleaded that it had been operating under the terms of this standard agreement even though Shulman had never agreed to sign it.) Leader walked out of the meeting, declaring an end to ITSI's relationship with Brunswick. The next day, November 15, 1989, Brunswick wrote to Wisconsin Central informing it that ITSI had terminated its relationship with Brunswick. This was the first that Wisconsin Central had heard of Brunswick, and Brunswick had to eventually provide a list of serial numbers for its trailers so that Wisconsin Central could determine which trailers belonged to Brunswick. And at this time, Brunswick was unable to perform ITSI's duties under the contract: it had no way of tracking trailers, making repairs, etc. Indeed, in Brunswick's letter to Wisconsin Central, Brunswick indicated that it wanted its trailers to stay with Wisconsin Central, but under the control of a new manager.

About one month later, on December 13, 1989, Brunswick filed the present suit against Wisconsin Central and ITSI in the Northern District of Illinois. Count I of the complaint sought an injunction against Wisconsin Central preventing it from paying to ITSI any money earned on Brunswick trailers. Count II sought a judgment against Wisconsin Central for any such money paid to ITSI after November 15, 1989. Count III sought an accounting against ITSI and a judgment for an amount that ITSI allegedly had overcharged Brunswick in the past. The

case was initially assigned to Judge Ann Claire Williams.

Subsequent to the filing of the suit, Wisconsin Central apparently segregated the revenues earned from Brunswick trailers, and gave those amounts to ITSI's lawyer based on his representation that the funds would be used to pay for the outstanding repair bills. After November 15, 1989, Wisconsin Central paid ITSI about $400,000 that was from fees earned on Brunswick's trailers, and ITSI paid about $160,000 for repairs to Brunswick's trailers that had accrued after November 15. The parties agreed that Wisconsin Central returned Brunswick's trailers to it as soon as possible; there was a delay because Wisconsin Central could return the trailers only after they came back from service with other railroads. The parties also agreed that ITSI eventually paid all the outstanding repair bills.

## II. Proceedings In the District Court

On January 12, 1990, Wisconsin Central filed a motion to dismiss the complaint, arguing that there was no privity of contract between Brunswick and Wisconsin Central and thus Wisconsin Central owed no duty to pay Brunswick. On February 1, 1990, prior to responding to Wisconsin Central's motion to dismiss, Brunswick filed a motion for partial summary judgment against Wisconsin Central. Brunswick asserted that it was an undisclosed principal and could therefore sue on the contract between its agent (ITSI) and Wisconsin Central. This was the first time that Brunswick asserted this theory. The district court eventually denied these motions.

After a period of discovery, on August 26, 1991, Brunswick and Wisconsin Central filed cross motions for summary judgment. Wisconsin Central argued that, under the rule of the Restatement (Second) of Agency § 305, Brunswick, at best only one of several undisclosed principals to the Trailer Use Agreement, could not bring a suit to enforce a part of the contract. Some eight months later, on April 30, 1992, the district court entered a memorandum opinion and order denying the two cross motions for summary judgment. The court noted that Wisconsin Central's

multiple undisclosed principals argument looked promising, but *sua sponte* concluded that this probably was an affirmative defense, which Wisconsin Central had not pleaded. The court ordered briefing on this issue, which the parties completed on May 27, 1992.

By minute order dated March 31, 1993, the district court announced its ruling that Wisconsin Central's multiple undisclosed principals argument was an untimely pleaded affirmative defense and was waived. After an extended delay, the district court issued its memorandum order and opinion on November 3, 1994 in support of its holding. The record does not reveal nor do the parties discuss the reasons for the extended delays in resolving these various motions and issues. Especially when there is the possibility of pre-judgment interest, such delays can further complicate this type of litigation. *See, e.g., In re Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845, 846–47 (7th Cir.1997).

The case was then transferred to Judge Bucklo, who conducted a one-day bench trial on April 29, 1996. The district court found for Brunswick on most but not all issues. The district court awarded Brunswick $240,000, which was the difference between the $400,000 revenue from Brunswick trailers that Wisconsin Central had paid to ITSI after November 15, 1989, minus the $160,000 in repair bills that had accrued after that date and which ITSI had paid. The district court did not award Brunswick pre-judgment interest as it had requested. Wisconsin Central timely appealed, and Brunswick then cross-appealed. On appeal Wisconsin Central argues that Brunswick was not entitled to anything, and on cross-appeal Brunswick argues that the district court erred in deducting the $160,000 from its damages and in not awarding pre-judgment interest.

## III. Analysis

In reviewing the district court's findings after a bench trial, we accept the district court's factual findings unless they are clearly erroneous, but, of course, we review *de novo* the district court's legal conclusions. *Petrilli v. Drechsel*, 94 F.3d 325, 329 (7th Cir.1996). The district court assumed that

Illinois law governed all the substantive issues in this case, and we do the same. *See ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir.1995) (if neither party argues that the forum state's choice of law rules require the application of another state's substantive law, then the substantive law of the forum state governs).

■ The central issue presented by this case concerns what rights and obligations Brunswick had *vis a vis* the Trailer Use Agreement. While on the surface the question seems simple, the answer is somewhat involved. We must first determine Brunswick's relationship to the Trailer Use Agreement, for the agreement was signed by ITSI and Wisconsin Central, and Brunswick appears not to be a party to it. The district court found that Brunswick was an "undisclosed principal" to the Trailer Use Agreement. Wisconsin Central now challenges this factual finding. And if Brunswick is an undisclosed principal, what rights and obligations would this status give Brunswick? Generally, an undisclosed principal may "step into the shoes" of its agent and assume all the rights and obligations of a contract that the agent had entered into on the undisclosed principal's behalf. But Wisconsin Central argues that Brunswick may not step into ITSI's shoes because Brunswick was only one of 35 such undisclosed principals who were not acting jointly. The district court held that this argument was an unpleaded affirmative defense and precluded Wisconsin Central from asserting it.

*A. Whether Brunswick was an undisclosed principal to the Trailer Use Agreement.*

■ Brunswick argues that ITSI was its agent and that Brunswick was an undisclosed principal to the Trailer Use Agreement. Under Illinois law, the existence of an agency relationship and its extent are questions of fact, but of course if the facts are undisputed the issues can be resolved as questions of law. *Wargel v. First Nat'l Bank of Harrisburg*, 121 Ill.App.3d 730, 77 Ill.Dec. 275, 460 N.E.2d 331, 334 (1984). Generally, an agent is "one who undertakes to manage some affairs to be transacted for another by his authority, on account of the latter, who is called the principal, and to render an account." *Id.* "The test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent, as well as the agent's ability to subject the principal to liability." *Id.*

■ Wisconsin Central has a difficult, though not insurmountable, burden to get a district court's factual findings reversed on appeal. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948); also *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States Gypsum Co.*). Sufficient evidence supports the district court's finding that Brunswick was an undisclosed principal to the Trailer Use Agreement. Shulman had executed a power of attorney in favor of ITSI so that it could enter into agreements on Brunswick's behalf. ITSI's correspondence with Brunswick referred to ITSI taking actions "on behalf of" Brunswick. And ITSI's standard written Management Agreement—under which ITSI pleaded it was operating even though Shulman had refused to sign it—identified Brunswick and ITSI as principal and agent. This was enough to establish an agency relationship, and so the district court's finding was not clearly erroneous.

As Wisconsin Central correctly argues, however, ITSI's agency does not necessarily compel a finding that the scope of that agency included entering into the Trailer Use Agreement on behalf of the undisclosed principals; ITSI could have been contracting on its own behalf. Wisconsin Central makes strong arguments why Brunswick was not an undisclosed principal to the Trailer Use Agreement. There is certainly not enough evidence to support a finding that ITSI entered into the Trailer Use Agreement solely on behalf of Brunswick. (Indeed, ITSI entered into the Trailer Use Agreement months before sending any Brunswick trailers to Wisconsin Central.) But this is not what the district court found, and there is

enough evidence to support the finding that ITSI entered into the Trailer Use Agreement on behalf of all of the various undisclosed principals, not any particular ones. So we hold that the district court's finding was not clearly erroneous. But for Brunswick, this is a Pyrrhic victory: the fact that it was only one of several undisclosed principals defeats its claims under the Trailer Use Agreement.

*B. Whether Brunswick could sever the Trailer Use Agreement and enforce a part of it.*

■ Brunswick prevailed below on the theory that it could "step into the shoes" of ITSI as an undisclosed principal to the Trailer Use Agreement. If Brunswick were the sole undisclosed principal to the Trailer Use Agreement, it would be unquestionable that it could enforce the contract in its own right. *See, e.g., Rush–Presbyterian–St. Luke's Medical Center v. Hellenic Republic,* 980 F.2d 449, 452–53 (7th Cir.1992) (Illinois law); *People ex rel. Ames v. Marx,* 370 Ill. 264, 18 N.E.2d 915, 919 (1938); *O'Connor v. Village of Palos Park,* 31 Ill.App.3d 528, 333 N.E.2d 276, 281 (1975); *Jovan v. Starr,* 87 Ill.App.2d 350, 231 N.E.2d 637, 639 (1967) (quoting *Saladin v. Mitchell,* 45 Ill. 79, 82 (1867)). The question, then, is whether this result changes because Brunswick is not a sole undisclosed principal but is rather only one of many undisclosed principals who individually hired ITSI. Wisconsin Central relies on Restatement (Second) of Agency § 305 to show that it does make a difference. That section states:

> Unless otherwise agreed between the principal and the agent, the other party to a contract made by an agent for several undisclosed principals who have not jointly authorized him is not liable in an action at law upon the contract brought by one of them alone.

Clearly, under this rule, Brunswick cannot bring this suit. But the Illinois Supreme Court has not adopted the rule of Section 305. (Indeed, our research shows that apparently no court has either adopted or rejected the rule of Section 305.) But we note that the Illinois Supreme Court, like many state courts, often adopts rules from the various Restatements. *See, e.g., Olson v. Etheridge,* 177 Ill.2d 396, 226 Ill.Dec. 780, 686 N.E.2d 563, 570 (1997) (unanimous) (overruling prior decision and adopting rule of Restatement (Second) of Contracts § 311); *Cult Awareness Network v. Church of Scientology Int'l,* 177 Ill.2d 267, 226 Ill.Dec. 604, 685 N.E.2d 1347, 1352–53 (1997) (unanimous) (reversing appellate court decisions and adopting rule of Restatement (Second) of Torts § 674). "As a federal court sitting in diversity, we must use our own best judgment to estimate how the [state's highest court] would rule as to its law." *Valerio v. Home Ins. Co.,* 80 F.3d 226, 228 (7th Cir.1996). Our task, then, is to determine what rule the Illinois Supreme Court would adopt for such situations.

The parties could find only one case directly on point: *Delaware, L. & W. R.R. v. Thayer,* 41 Ill.App. 192 (1891), which, although it is an old case, appears never to have been overruled. In that case an agent of multiple undisclosed principals had a contract with a railroad to ship grain. The railroad had agreed to pay the agent some rebates based on the total amount of grain shipped. One of the undisclosed principals came forward and sued the railroad for its share of the rebates. The court rejected this claim and stated: "The contract, which an unknown principal may assume and claim the benefit of, is the [whole] contract made, and not a part of it." *Id.* at 197. The court also said that "the demand against [the railroad] for rebates can not be split up into as many claims as there were cars or shippers." *Id.* at 198. If the Illinois Supreme Court would apply this rule, then, it would doom Brunswick's claim because Brunswick is in the same position as the undisclosed principal in *Thayer:* it seeks to dissect the Trailer Use Agreement into as many claims as there are undisclosed principals.

We have found cases from other jurisdictions that apply the same rule, though they too are antiques. The seminal case seems to be *Roosevelt v. Doherty,* 129 Mass. 301 (1880), upon which the *Thayer* court relied. In *Roosevelt,* the defendant contracted to purchase glass for a building from the agent

of an undisclosed principal. The contract between the defendant and the agent was a single contract for all the required glass for which a single price was to be paid. 129 Mass. at 302. Part of the glass to be supplied to the defendant was plate glass belonging to the undisclosed principal; the other glass specified in the contract was to be supplied from glass owned by the agent itself. When the defendant did not pay the agent for any of the glass, the undisclosed principal sued seeking recovery of that portion of the contract price representing its plate glass. Thus, the court viewed the issue as "whether the plaintiff, as an undisclosed principal, can maintain an action against the defendant to recover the value of the plate glass belonging to him, included in the entire contract." 129 Mass. at .301. (That, of course, portrays the issue here.) The court concluded that he could not. After thoroughly analyzing the appropriate precedents, the court held that

> the contract made by the defendant was an entire contract for a gross sum; and [so] the plaintiff had no right to sever the same and maintain an action in his own name, and subject the defendant to a separate suit for the value of the plate glass belonging to him and included in the complete sale.

129 Mass. at 305. Again, applying this rule would defeat Brunswick's claim.

In *H. Midwood's Sons Co. v. Alaska–Portland Packers' Ass'n*, 28 R.I. 303, 67 A. 61 (1907), the Rhode Island Supreme Court addressed a similar issue. The defendant contracted with the agent of multiple undisclosed principals to sell a considerable amount of canned salmon. The agent lumped the principals' orders together and submitted a single order—and thus concluded one contract—with the defendant. When the defendant shipped nonconforming salmon to one of the undisclosed principals, it sued the defendant for breach of contract. Like Brunswick in the present case, the plaintiff relied on the rule that an undisclosed principal may maintain an action on a contract entered into by its agent. The court rejected this argument, reasoning that

a plain distinction is drawn between cases where the undisclosed principal is the sole party in interest (. . . where the undisclosed principal has the undoubted right to sue in his own name) and cases where there are several undisclosed principals under the contract and their orders have been "lumped" by the factor or agent in making the contract.

67 A. at 62 (citations omitted). Because the plaintiff was one among several principals (as is Brunswick in this case), the court held that it could not sue on the contract. The question here, then, is whether the Illinois Supreme Court would adopt the rule of *Thayer*, *Roosevelt*, and *H. Midwood's Sons*, and the Restatement § 305 for a case such as this. We believe that it would.

We come to this conclusion for several reasons. First, we see a fundamental flaw in Brunswick's argument. It claims to be legally entitled to "step into the shoes" of ITSI, its agent, in the same way that a single undisclosed principal would be entitled. But practically, Brunswick, though perhaps capable of "stepping into" ITSI's shoes for some limited purposes, was wholly incapable of "filling" those shoes because, following the metaphor, ITSI's feet were much larger than Brunswick's. As stated above, Brunswick was incapable of performing even its pro rata share of ITSI's obligations under the Trailer Use Agreement, let alone assume the obligations under the whole contract. What Brunswick seems really to have been after was to collect from Wisconsin Central monies that it had a right to receive from ITSI, its agent. It is understandable why it would want to be first in line to collect, but it could not perform the other managing duties required for its own trailers, much less the trailers of the 34 other owners.

Also, permitting Brunswick to sever the Trailer Use Agreement into multiple sub-agreements would completely defeat the bargained-for expectations of Wisconsin Central. This would generally not be the case where a single undisclosed principal stepped into the shoes of its agent: Such cases involve a substitution of a party, but not a change in the rights or obligations of either party. But if Brunswick could sever the Trailer · Use

Agreement, it would work a fundamental change in the parties' rights and obligations. Wisconsin Central would have had to pay Brunswick directly and would also have had to perform all of ITSI's obligations under the Trailer Use Agreement (or contract with yet another party to do this). We assume this would have required Wisconsin Central to negotiate Brunswick's appropriate share of the revenues. This is exactly what Wisconsin Central had contracted to avoid. And one must remember that if Brunswick had the right to sever the Trailer Use Agreement, so too must all the other 34 undisclosed principals. Surely Brunswick would object if one or more of the others were in a position to grab what they considered their share of the commingled proceeds.

█ Finally, for policy and practical reasons, we think that the rule announced by the prior courts makes commercial sense in that it protects a valuable type of transaction. ITSI was in a position analogous to the agents in each of the three cases, who were all "factors." A factor under common law was a commercial agent for one or more principals who gave the factor control and possession of the principals' property for the purpose of selling it; in exchange, the factor received a commission on the sale as compensation. *See, e.g., Neild v. District of Columbia,* 110 F.2d 246, 259 (D.C.Cir.1940). The common law protected this type of transaction by providing, among other things, a general lien for the factor on all of the principals' goods in his possession and on the sums received from the sale of those goods. *See, e.g., Warren v. First Nat'l Bank of Columbus,* 149 Ill. 9, 38 N.E. 122, 129 (1893). A factor served a commercially beneficial role because he permitted those with property but with no expertise in selling it (such as farmers owning grain) to benefit from the factor's expertise in selling the particular commodity. It permitted goods to be efficiently transferred from those who had them to someone who could make use of them. ITSI served an analogous role. Trailer owners such as Brunswick (really Harry Shulman) with no expertise in marketing their property were able to use ITSI's expertise to get their trailers into the possession of an entity like Wisconsin Central that could use

them profitably. We make this comparison because ITSI, like a factor but unlike a common broker, took possession of the principals' trailers and controlled their disposition. Permitting a principal like Brunswick to unilaterally alter the fundamental terms of the agreement between ITSI and Wisconsin Central would do much to disrupt this type of transaction to the detriment of other undisclosed principals as well as the ultimate customer-users. Wisconsin Central dealt with an entity like ITSI specifically because it did not want to deal with numerous individual owners. And Wisconsin Central relied on the expertise and resources of ITSI, which resources and expertise Brunswick—and we assume the other owners—did not have. Here, ITSI "lumped" the trailers of all 35 undisclosed principals together for the principals' benefit as well as ITSI's and Wisconsin Central's. Lumping the trailers together made Wisconsin Central interested in contracting with ITSI and so got the trailers into service and earning income. Brunswick benefited from this lumping, but wants to be able to unilaterally deconstruct the arrangement to the detriment of the other parties involved. Such a rule would discourage entities like Wisconsin Central from contracting with entities like ITSI, or would at least make such contracts less certain and therefore less efficient.

█ We therefore believe that the Illinois Supreme Court would hold that a party such as Brunswick, who is only one of multiple, non-joint undisclosed principals, could not bring a suit to enforce a part of a contract made by its agent. Thus, judgment would be appropriate for Wisconsin Central unless it was procedurally precluded from asserting this rule.

In part C below we address the district court's ruling that Wisconsin Central could not assert the undisclosed principal rule. First, however, we want to clarify that we do not mean to imply that a party in Brunswick's position is without any remedy. On the contrary, we believe that Brunswick had several options open to it. For example, if Wisconsin Central no longer had a right to use Brunswick's trailers it could have

brought an action under unjust enrichment or some other noncontractual or quasi-contractual theory; it could have tried to act in concert with the other undisclosed principals; or it could have filed an involuntary bankruptcy petition against ITSI or otherwise tried to gain some control over ITSI, through an injunction or otherwise. Indeed, it is odd that Brunswick seems to have sat back and watched ITSI, which was a party defendant and unquestionably obligated to pay Brunswick, slowly dissolve as this lengthy litigation progressed. (ITSI was operating for at least two years after this litigation began.) Of course we have no opinion about whether any of these or other options might have succeeded.

## C. Whether the multiple undisclosed principals rule is an affirmative defense.

 Brunswick argues, and the district court held, that the multiple undisclosed principal rule is an affirmative defense that must be pleaded. The district court therefore concluded that Wisconsin Central could not make this argument because by failing to affirmatively plead it, it had been waived. We disagree. Fed.R.Civ.P. 8(c) provides that "a party shall set forth affirmatively [various enumerated defenses] *and any other matter constituting an avoidance or affirmative defense.*" (Emphasis supplied.) As a general matter, an affirmative defense that is not timely pleaded is waived. *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997).

The multiple undisclosed principals rule is not one of the enumerated defenses, so if the rule is a defense within the ambit of Rule 8(c), then it must be one of the "any other" defenses. The appropriate analysis for determining what falls into the "any other" category is not well settled, especially in diversity cases. In *Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 813 (7th Cir.1973), a diversity case, we

reasoned that where "Rule 8(c) does not specifically list an issue as an affirmative defense, resort to state law dealing with burdens of proof is the only logical method to ascertain the pleading character of a defense."[3] Under that approach, a defense is an affirmative defense if the defendant bears the burden of proof. In *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1377 (7th Cir.1990), also a diversity case, we reasoned that a defense was an affirmative one if it did not controvert the plaintiff's proof. And courts have used other analyses to determine whether a defense was within the scope of Rule 8(c). *See*, Wright & Miller, *Federal Practice and Procedure*, § 1271 (collecting cases).

We need not decide which of the various analyses are "correct," because under any analysis the multiple undisclosed principals rule is not an affirmative defense: it is merely a part of the legal rule that permits some—but not all-undisclosed principals to enforce their agents' contracts. In Illinois, generally only a party to the contract or one in privity to a party may sue to enforce it. *Kohlmeier v. Shelter Ins. Co.*, 170 Ill.App.3d 643, 121 Ill.Dec. 288, 525 N.E.2d 94, 101 (1988) (noting exception for third-party beneficiaries); *also Smith v. Clark Equip. Co.*, 136 Ill.App.3d 800, 91 Ill.Dec. 520, 483 N.E.2d 1006, 1009 (1985) (same). In its complaint, Brunswick never bothered to plead how it was able to enforce the Trailer Use Agreement; it asserted that it was an undisclosed principal only after Wisconsin Central had filed a motion to dismiss. Seemingly as an afterthought, Brunswick sought to avoid the legal rule barring one who was not a party to a contract from suing on it by relying on the legal rule that generally an undisclosed principal may sue to enforce a contract entered into on its behalf. Importantly, an undisclosed principal's right to sue is not absolute but rather is subject to limitations. For example, an undisclosed principal

---

**3.** In dictum, we stated that such reasoning would lead to the result that in diversity cases even where Rule 8(c) specifically enumerated a defense as one that must be pleaded, a defendant need not plead it if state law did not place the burden of proof on him. 488 F.2d at 813. This dictum has been subsequently rejected. *Bank*

*Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 235 n. 2 (7th Cir.1991) (citing *Merit Ins. Co. v. Colao*, 603 F.2d, 654, 659 (7th Cir.1979)) ("Although the allocation of the burden of proof is determined by state law, in diversity cases the burden of pleading is determined by Rule 8 rather than state law.").

may not sue where the terms or form of the agreement would not permit it. *Lake Shore Management Co. v. Blum*, 92 Ill.App.2d 47, 235 N.E.2d 366, 368 (1968) (citing Restatement (Second) of Agency § 292). And an undisclosed principal may not sue where the other contracting party gave exclusive credit to the agent believing him to be the purchaser. *Wloczewski v. Kozlowski*, 395 Ill. 402, 70 N.E.2d 560, 562 (1946), *overruled in part by, Gould v. Stelter*, 14 Ill.2d 376, 152 N.E.2d 869, 872 (1958) (mutuality not required to obtain specific performance). We see the multiple undisclosed principals rule, then, not as a defense but merely another of these legal rules that specify which undisclosed principals may sue to enforce contracts.

We have said that the purpose of Rule 8(c) "is to avoid surprise and undue prejudice to the plaintiff by providing [it] notice and the opportunity to demonstrate why the defense should not prevail." *Venters*, 123 F.3d at 967 (collecting cases). Here, Wisconsin Central did what it should have done: It filed a Rule 12(b)(6) motion because Brunswick had not pleaded how it was able to enforce the Trailer Use Agreement; and after Brunswick asserted that it was an undisclosed principal, Wisconsin Central filed a motion for summary judgment based on the multiple undisclosed principals rule. That was all the notice and opportunity to which Brunswick was entitled. Wisconsin Central was therefore entitled to the benefit of this rule and the district court erred when it held otherwise. We concluded above that this rule completely defeats Brunswick's claims, which were premised on the Trailer Use Agreement. We therefore reverse the judgment for Brunswick and remand to the district court to enter judgment for Wisconsin Central.

## IV. Conclusion

In summary, the district court did not clearly err in finding that Brunswick was one of multiple undisclosed principals to the Trailer Use Agreement. But under Illinois law, one of multiple undisclosed principals may not sue to enforce a part of a contract entered into by its agent. The district court erred in holding that this rule is an affirmative defense that must be pleaded, so we

REVERSE the judgment entered in favor of Brunswick and REMAND to the district court to enter judgment for Wisconsin Central.