Elizabeth H. DOLE, Secretary of
Labor, Petitioner,

v.

WILLIAMS ENTERPRISES, INC., and
Occupational Safety and Health
Review Commission, Respondents.

No. 88–1658.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 4, 1989.

Decided May 30, 1989.

As Amended July 6, 1989.

Barbara A.W. McConnell, Atty., Dept. of Labor, with whom Cynthia L. Attwood and Barbara Werthmann, Washington, D.C., were on the brief, for petitioner.

Ann Rosenthal, Washington, D.C., also entered an appearance, for petitioner.

James Brent Clarke, Jr., Washington, D.C., was on the brief, for respondents.

Before WALD, Chief Judge, and ROBINSON and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

The Secretary of Labor ("Secretary") petitions for review of an order issued by the Occupational Safety and Health Review Commission ("OSHRC" or "Commission")

under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651–78, which vacated an abatement order issued by the Secretary against Williams Enterprises, Inc., for a violation of 29 C.F.R. § 1926.750(b)(1)(iii). We conclude that the Commission's order was not in accordance with governing law, and we therefore remand this case with directions to reinstate and enforce the citation against Williams.

## I. BACKGROUND

Williams Enterprises, Inc. ("Williams") was the steel erection subcontractor at the Intelsat building construction site located at 4000 Connecticut Avenue, N.W., in Washington, D.C. On May 6 and 7, 1987, OSHA Compliance Officer Wilfred C. Epps conducted an inspection at the Williams worksite to determine whether the working conditions conformed to governing safety regulations. Epps discovered, *inter alia,* that Williams had failed to install a perimeter cable along two exposed edges of the second tier of the building structure, despite the fact that a large portion of the floor of the second tier was covered with temporary metal decking. This failure placed Williams in violation of 29 C.F.R. § 1926.750(b)(1)(iii), which requires installation of a safety railing around the periphery of all temporary metal-decked floors in tier buildings.[1] Williams' failure to install this protective measure left workers exposed to a fall hazard of 20 feet (at the southern exposure) to 30 feet (at the eastern exposure). Epps instructed Williams to abate the violation by installing a protective cable, and Williams did so. Epps proceeded to issue Williams a citation for violating the regulation, classifying the violation as "serious" as defined in section 17(k) of OSHA, 29 U.S.C. § 666(k).

Williams appealed. At the hearing before the OSHRC's administrative law judge ("ALJ"), Williams targeted its questioning at two basic contentions. First, it sought to show that the tier at issue was not "fully decked"—*i.e.*, that the temporary floor sheets had not all been put in place on the third level—in an effort to support its argument that § 1926.750(b)(1)(iii) by its own terms did not apply to Williams' worksite. Second, it sought to elicit testimony that installation of the allegedly required safety cable in fact presented hazards to the workers responsible for doing the installation work.

The ALJ issued a brief opinion, *Secretary of Labor v. Williams Enterprises, Inc.,* Docket No. 87–960, decision and order (O.S.H.R.C. (ALJ) July 11, 1988) ("ALJ op.") (reprinted in the Joint Appendix ("J.A.") at 35–42), in which he made the following relevant factual findings:

"3. The metal decking on the second tier was substantially complete. (Both Mr. Epps and [former Williams employee] Mr. Moore testified that the tier was 90% decked.... Mr. Graham [job foreman] testified that decking was 75% complete....) On the south and east sides of the second tier, decking was complete to the perimeter except for small triangular sections." ALJ op. at 2 (J.A. at 36).

"5. There was no perimeter cable at the edges of the south and east sides of the second tier.... The fall distance from the south side of the tier was 20 feet to the mechanical room roof. From the east side, the fall distance was 30 feet to the ground." ALJ op. at 3 (J.A. at 37).

"6. Respondent's employees were exposed to a fall hazard when pulling up welding lead and using the ladder." ALJ op. at 3 (J.A. at 37).

"7. Respondent's employees were exposed to a fall hazard when they installed cable on the south and east perimeters." ALJ op. at 3 (J.A. at 37).

---

1. The regulation provides:

§ 1926.750 **Flooring requirements.**

. . . . .

(b) *Temporary flooring—skeleton steel construction in tiered buildings.*

. . . . .

(1)(iii) Floor periphery—safety railing. A safety railing of ½–wire rope or equal shall be installed, approximately 42 inches high, around the periphery of all temporary-planked or temporary metal-decked floors of tier buildings and other multifloored structures during structural steel assembly.

"8. Respondent's employees received a longer exposure to the fall hazard during installation of the guardrails than during the work that made the guardrails necessary. That part of the installation requiring Respondent's employees to 'coon' across four- to eight-inch wide steel beams exposed Respondent's employees to a *more serious fall hazard* than pulling up welding lead and using the ladder." ALJ op. at 3–4 (J.A. at 37–38) (emphasis added).

Based on these factual findings, the ALJ determined that the regulation *did* apply to Williams' worksite, ALJ op. at 5 (J.A. at 39), but nevertheless concluded that "entry of an abatement order requiring the installation of perimeter cable would not provide Respondent's employees with 'appropriate' relief." ALJ op. at 6 (J.A. at 40) (citing 29 U.S.C. § 659(c)).

The Secretary of Labor petitioned the full Commission for discretionary review of the ALJ's decision, but no Commissioner directed review, and the ALJ's order therefore became the final order of the Commission pursuant to 29 U.S.C. § 661(j).

## II. ANALYSIS

The Secretary argues that the Commission's order effectively vacated the citation against Williams under a theory of "greater hazard," but that the Commission did so without any regard whatsoever for the substantial body of law that has grown up around the "greater hazard" defense—law that, had it been observed, would have plainly precluded the doctrine's application in this case. We agree.

 "Greater hazard" refers to a well-established Commission doctrine that, in brief, allows employers to escape sanctions for violations of otherwise applicable safety regulations if they can establish that the act of abating a violation would itself pose an even greater threat to the safety and health of their employees. "Greater hazard" is an affirmative defense that is subject to certain specific pleading require-

ments under the Commission's procedures. *See* 29 C.F.R. § 2200.36(b). Moreover, Commission precedent clearly requires that to prevail on the "greater hazard" defense, an employer must establish the three substantive elements of the defense: "(1) the hazards of compliance with a standard are greater than the hazards of noncompliance, (2) alternative means of protection are unavailable, and (3) a variance was unavailable or inappropriate." *Lauhoff Grain Co.*, 1986–1987 O.S.H. Dec. (CCH) ¶ 27,814, at 26,397–98 (Rev. Comm'n 1987) (citations omitted). *See also M.J. Lee Constr. Co.*, 1979 O.S.H. Dec. (CCH) ¶ 23,330, at 28,227 (Rev. Comm'n 1979). This three-part test, each prong of which employers must satisfy, has been recognized and approved by several federal courts of appeals. *See, e.g., Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377, 1389 n. 13 (D.C.Cir.1985) (denying the availability of the affirmative defense of "greater hazard" because "[t]here [was] no indication in the record that Willson attempted to obtain a variance"); *Modern Drop Forge Co. v. Secretary of Labor*, 683 F.2d 1105, 1116 (7th Cir.1982); *General Electric Co. v. Secretary of Labor*, 576 F.2d 558, 560–62 (3d Cir.1978).

It is beyond serious doubt that the Commission's order vacated the citation on the ground that abatement of the railing violation exposed Williams' employees to a "more serious ... hazard" than did the violation itself. This is the very essence of the "greater hazard" defense,[2] and it can be sustained only if the requirements of that defense have been met. Williams' argument—indeed, Williams' *only* argument to join issue with the basis of the Secretary's appeal—is that "[t]he ALJ did not use the term 'greater hazard' and indeed he did not intend to." Br. for Appellee at 6. This much is evidently true. Yet clearly the ALJ's failure to *label* his analysis with its correct name—or, more properly, his apparent failure to realize that he was invoking the doctrine of "greater hazard"— cannot free him from the standards devel-

---

**2.** For purposes of this case, we wholeheartedly embrace the now-infamous "duck test," dressed up in appropriate judicial garb: "WHEREAS it looks like a duck, and WHEREAS it walks like a duck, and WHEREAS it quacks like a duck, WE THEREFORE HOLD that it is a duck."

oped by the Commission for this line of reasoning.[3] Moreover, he cannot evade the constraints on his discretion by claiming that he was acting under his authority to grant "other appropriate relief." 29 U.S.C. § 659(c). This radical approach would transform the law as we know it: all OSHRC doctrines and precedent would be held applicable to ALJ adjudications *unless the ALJ decided that they were not "appropriate."* Such an authority would run counter to the whole statutory scheme, which provides for relatively predictable adjudicatory outcomes that are governed by generally accepted and binding legal norms, rather than the unbridled discretion of a single magistrate.[4]

█ Just as it is clear to us that the substance of the "greater hazard" defense was invoked by the Commission, so too it is clear that the requirements of the defense were not met. First, as a procedural matter, Williams never pleaded "greater hazard," and thus it was never properly brought into the case. "Greater hazard" is an *affirmative defense*, which, according to Commission regulations, "[t]he employer shall state in its answer in [a] separate numbered paragraph[ ]." 29 C.F.R. § 2200.36(b)(1). Furthermore, our understanding of affirmative defenses, buttressed by years of experience under Rule 8(c) of the Federal Rules of Civil Procedure,[5] is that these defenses place the burden on the party raising them to affirmatively plead the claim in order to bring them into the action. *See, e.g., Camalier & Buckley–Madison, Inc. v. The Madison Hotel, Inc.,* 513 F.2d 407, 419 n. 92 (D.C. Cir.1975). A party's failure to plead an affirmative defense does not merely put him at a strategic disadvantage vis-à-vis the claim; rather, it generally "results in the waiver of that defense and its *exclusion from the case.*" 5 C. Wright & A. Miller, Federal Practice and Procedure

---

**3.** The ALJ's only reference to precedent was his citation to two federal courts of appeals' opinions, neither of which supports his novel disposition of this case. First, his opinion cites *U.S. Steel v. OSHRC,* 537 F.2d 780, 783 (3d Cir.1976), for the proposition that "abatement would present Respondent with a 'Catch 22' dilemma." In that case, with facts similar to those here, the court recognized the argument's "appealing Catch–22 aspect," but ultimately upheld the ALJ's decision to *reject* the argument because the employer failed to meet its burden on the first item required under the greater hazard doctrine—the very existence of a greater hazard from compliance. Second, the ALJ cited *Holtze Construction v. Marshall,* 627 F.2d 149, 151–52 (8th Cir.1980), after noting that "[w]hen installing the perimeter guarding, Respondent's employees received a longer exposure to the fall hazard than pulling up welding lead had required." But in *Holtze,* the court expressly noted that it was not addressing the propriety of the 3–part test associated with the "greater hazard" defense (which is nowhere challenged here, expressly or implicitly), because it found that the employer was seeking to eliminate the original hazard altogether by erecting a *wall*— "a functional equivalent that when built would be better than a guardrail to protect against unguarded edges." Nothing in the record suggests that analogous facts were present here.

**4.** We are frankly perplexed by the logic of the ALJ's interpretation of his statutory authority to dispose of this case as he did. The section of the statute to which his opinion refers authorizes the Commission, and hence the ALJ in the first instance, to "issue an order ... affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief...." 29 U.S.C. § 659(c). As noted earlier in the text, the ALJ disposed of the Secretary's citation by *vacating* it. Thus, the authority to render this decision would logically originate, one would think, in the express statutory grant of authority to "vacat[e] ... [a] citation." But the ALJ reasoned that he also had the apparently separate authority to grant precisely the same form of relief—vacature—under a statutory grant of power to direct *"other"* appropriate relief" (emphasis added). Webster's New Collegiate Dictionary defines "other" to refer to one that is "distinct from those first mentioned ... not the same ... a different or additional one"; according to the ALJ's reading, however, the final catch-all authority to grant "other appropriate relief" would in fact overlap the earlier grants of specific authority to "affirm[ ], modify[ ], or vacate[e]." In any event, the distinction is of little import here, for under either grant of authority the Commission is bound by its prior precedent.

**5.** Reliance on the law surrounding the Federal Rules is not merely idle analogizing: although the procedural scheme employed in our federal district courts is not fully binding on OSHRC proceedings, "procedure ... in accordance with the Federal Rules of Civil Procedure" is expressly provided for in OSHRC's regulations to fill in gaps created by "the absence of a specific provision" in the regulations themselves. 20 C.F.R. § 2200.2(b).

§ 1278 (1969 & Supp.1986) (emphasis added).[6] This rule suffices to demonstrate the error of the ALJ's decision.

■ The Secretary goes on, however, to note that even if the defense of "greater hazard" was as a procedural matter permissibly present in the case, it is nonetheless clear as a substantive matter that the elements of the claim were not satisfied. While the ALJ rested his decision on the *Secretary's* "fail[ure] to demonstrate that entry of an abatement order ... would be appropriate," ALJ op. at 7 (J.A. at 41), the burden would be on Williams in the first instance to prove the converse proposition. *See RSR Corp. v. Donovan,* 747 F.2d 294, 303 n. 31 (5th Cir.1984) ("If 'variance' and 'alternative means' are Commission prerequisites to the defense, an employer necessarily must put forward evidence of both to so defend before the agency."). And it is clear, as would be expected from Williams' failure to raise or even address the defense in this case, that the company has failed to meet its substantive burden. The Secretary undertakes to show

that the ALJ's finding as to the existence of a more serious threat to safety from abatement—the first element of the "greater hazard" defense—is not supported by substantial evidence. We do not address that issue, because for purposes of our holding it suffices that the record reveals *no* evidence to support any findings pertaining to the second and third elements— namely, the unavailability of alternative means of protection, and the unavailability (or inappropriateness) of a variance.[7] Without a showing on these elements of the claim, it was patently improper for the Commission to vacate the Secretary's citation on the ground that abatement posed a more serious hazard to Williams' employees.[8]

### III. CONCLUSION

"This court can instruct OSHRC to reinstate the citation, rather than remanding for further proceedings, if only one conclusion is supportable on the record before us." *L.R. Willson,* 773 F.2d at 1388 (citing *Donovan v. Stafford Constr. Co.,* 732 F.2d

---

**6.** One important policy justification for this strict penalty is that any other rule would fail to give notice to plaintiffs—or in OSHRC cases, the Secretary—of what issues they will be forced to address at trial. Moreover, if judges were free to disregard this rule and raise such issues *sua sponte* after a hearing is over, parties could never know with confidence that an issue, although not raised by the defendant, was in fact out of the case; under such a scheme, plaintiffs would be forced to anticipate and rebut all conceivable defenses, regardless of their validity or applicability in a certain case, for the simple reason that they would never know what issues the *judge* would deem important. The practical import of these policy justifications are borne out in the present case, where the Secretary now claims that if she had been on notice that "greater hazard" was a possible basis for the ALJ's decision, she would have presented evidence to show that Williams could not in fact satisfy the elements of the claim.

**7.** As has been noted in other cases, these elements of the defense of "greater hazard" are more than mere legal technicalities; rather, they have evolved to support the most basic objective of the OSHA scheme, namely "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources...." 29 U.S.C. § 651(b). *See, e.g., Modern Drop Forge Co. v. Secretary of Labor,* 683 F.2d 1105, 1116 (7th Cir.1982) ("If the great-

er hazard defense could be raised in an enforcement proceeding without first exhausting the variance procedure, employers would tend to bypass that procedure."); *General Electric Co. v. Secretary of Labor,* 576 F.2d 558, 561 (3d Cir. 1978) (noting that if employers are allowed to forego the variance procedures, "some employers will believe *incorrectly* that their working conditions are safer than those prescribed in the standards. By removing this incentive to seek variances, the Commission would be allowing an employer to take chances not only with his money, but with the lives and limbs of his employees." (emphasis in original)).

**8.** Williams' only other line of argument in this appeal is to attempt to resuscitate its moribund contention rejected by the ALJ below that § 1926.750(b)(1)(iii) does not apply to floors that are not fully decked. *But see Ashton Company, Inc.,* 1975–76 O.S.H. Dec. (CCH) ¶ 20,351 (Rev. Comm'n 1976) (holding that a duty to install a safety railing is present when a floor is three-fourths decked). Williams is apparently contending that such a finding by this court could provide an alternative ground for affirming the Commission's order. But even if there were merit to Williams' argument, we would have to remand the case for further consideration by the Commission. *See SEC v. Chenery Corp.,* 318 U.S. 80 (1943). Here, as we agree with the ALJ that the argument borders on the frivolous, we dispose of it summarily and send the case back to the Commission with instructions to reinstate the citation. *See infra,* Section III.

954, 961 (D.C.Cir.1984)). The record clearly reflects that Williams violated § 1926.750(b)(1)(iii). Moreover, although the Commission did not make a finding as to the "serious[ness]" of the violation, a serious violation exists "if there is a substantial probability that death or serious physical harm could result." 29 U.S.C. § 666(k). We find that the Secretary has established a serious violation of § 1926.750(b)(1)(iii), because she has shown that workers were exposed to a fall hazard of 20–30 feet, which could lead to serious physical harm.[9] *Cf. L.R. Willson,* 773 at 1388–89 (finding a serious violation when workers were exposed to falls of from 11 to 88 feet). We see no other supportable conclusion from the record before us. The citation vacated by OSHRC is therefore remanded with directions that it be reinstated, and the petition for review is

*Granted.*

**9.** As we stated in *L.R. Willson,* "This court can rule on the seriousness of the violation although neither the ALJ nor OSHRC reached the issue, because we are convinced that 'a remand on this issue would serve no purpose ... [and] that only one conclusion would be supportable.'" 773 F.2d at 1389 (quoting *Stafford Construction,* 732 F.2d at 961).