**Sharon RED DEER, Plaintiff,**

v.

**CHEROKEE COUNTY,
IOWA, Defendant.**

**No. C 97–4056–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Jan. 7, 1999.

## MEMORANDUM OPINION AND ORDER REGARDING MOTIONS IN LIMINE

BENNETT, District Judge.

I. INTRODUCTION ................................................644

II. LEGAL ANALYSIS ............................................645
 A. The "Non-Assistance" Incident ...........................645
 B. "After-Acquired Evidence" of Application Misconduct .....647
 C. Availability Of The "After-Acquired Evidence" Defense ...648
 1. "After-acquired evidence" as an affirmative defense ...649
 a. McKennon .......................................649
 b. What constitutes an affirmative defense? ..........649
 i. Rule 8(c) .....................................649
 ii. The "catchall" defenses ......................650
 iii. Summary of pertinent factors ................652
 iv. Application of the factors ...................652
 2. Leave to assert the defense ........................653
 a. The nexus between Rule 8(c) and Rule 15 ..........654
 b. Factors pertinent to leave to amend .............654
 c. Application of the factors ......................655

III. CONCLUSION ................................................656

This ruling on motions in limine in this lawsuit involving claims of a discriminatory failure to hire and retaliation probes the extent to which evidence of events that occurred after or were only discovered after the defendant's decision not to hire the plaintiff can nonetheless be admissible at trial. The defendant county seeks to exclude evidence of an incident that occurred more than a year after the plaintiff was not hired as a sheriff's deputy, but the plaintiff contends that evidence is admissible to show continuing retaliation for her complaints of discrimination in the sheriff's department's hiring process. The plaintiff, in her turn, seeks to exclude evidence from her prior employment records, because she contends those records were not considered by the county at the time it decided not to hire her, but the county contends those records are admissible "after-acquired evidence" of misrepresentations in the plaintiff's job application. Although the court must resolve these evidentiary questions, they have been overshadowed by pleading and trial readiness questions that have arisen as a consequence of the motions in limine. Those questions include whether "after-acquired evidence" is an affirmative defense that must be pleaded and proved by the defendant, and if the defense is an affirmative one, whether the failure to plead it previously in this case is a curable defect.

## I. INTRODUCTION

Plaintiff Sharon Red Deer, a Native American woman over the age of forty, filed this action against defendant Cherokee County on July 1, 1997. In her complaint, Red Deer asserts federal and pendent state-law claims of age, race, and sex discrimination and retaliation. More specifically, Red Deer alleges that she was discriminated against on January 28, 1997, and continuing thereafter, when she was denied a position as a sheriff's deputy with the County, and that she was retaliated against on February 28, 1997, and thereafter, for complaining about discrimination. Trial in this matter was set to begin on January 4, 1999. However, following a conference with the parties on December 30, 1998, prompted by issues raised in the final pre-trial order and the motions in limine now before the court, trial has been continued.

This matter comes before the court pursuant to defendant's "first" motion in limine, filed December 15, 1998, and plaintiff's "first" motion in limine, filed December 18, 1998. In its motion in limine, the County seeks to exclude evidence that, more than a year after the two occasions on which Red Deer was denied employment with the Sheriff's De-

partment, the Cherokee County Communications Center ("911") allegedly failed to dispatch an officer to assist Red Deer with a dispute that she had encountered at a store where she was working as a security guard. The County contends that if it discriminated or retaliated against Red Deer, it did so long before the "non-assistance" incident. It also contends that Red Deer's later difficulties in dealing with the Sheriff's Department do not tend to prove that she was a victim of discrimination when she first interviewed for a job over a year earlier or that she was retaliated against when she interviewed a second time, about eleven months earlier. Therefore, the County contends, whatever probative value the evidence of the "non-assistance incident" might have is substantially outweighed by the danger of confusing the jury and unfairly prejudicing the County. Red Deer has resisted the motion on the ground that evidence of the "non-assistance incident" is relevant to show a continuing pattern and practice of discrimination by the County against her when she called for assistance as part of her current job duties.

In her motion in limine, Red Deer has moved to exclude evidence of her past employment records, including Defendant's Exhibit C, concerning her employment with the East Central Independent School; Exhibit D, concerning her employment with the Douglas County Sheriff's Department; Exhibit E, concerning her employment with the City of Blair; and Exhibit F, concerning her employment with the City of Ogallala. Red Deer contends that this evidence was not obtained by the County prior to its decisions not to hire her, played no part in the County's decisions not to hire her, and consequently is not relevant or probative of any issues in this case, but is instead an attempt to put her "on trial." In its resistance to Red Deer's motion in limine, the County argues that the employment records are admissible "after-acquired evidence" of wrongdoing. The County contends that Red Deer misrepresented the reasons for her departures from two of her previous jobs, and characterizes her termination from one of those jobs as a discharge for "dishonest conduct." Dishonest conduct, the County points out, is a ground for termination of a deputy

sheriff and prior dishonest conduct would have constituted a ground not to hire Red Deer at all. Thus, the County asserts that, had it known about Red Deer's misrepresentations on her job application at the time of its decision not to hire her, the County would not have hired Red Deer regardless of her race, sex, or age. In a reply brief, Red Deer contends that the employment records should nonetheless be excluded, because nothing in them shows any action on her part rising to the level of "misconduct" that would justify the County in not hiring her.

The court will consider each of these motions in turn, as well as issues concerning pleading and trial readiness that have arisen as a consequence of the court's legal analysis of evidentiary questions.

## II. LEGAL ANALYSIS

### A. The "Non–Assistance" Incident

 Taking the first motion first, the court finds that the County's motion to exclude evidence of the "non-assistance" incident must be denied on several grounds. First, the court notes that Red Deer has alleged continuing violations of discrimination and retaliation, not just isolated incidents of discrimination and retaliation, as the County would have it: She alleges discrimination "beginning on January 28, 1997, and continuing to the present time," and retaliation "beginning on February 28, 1997, and continuing until the present time." Complaint, ¶ 1. A "continuing violation" claim generally involves an attempt to obtain recovery for incidents of discrimination falling outside of the limitations period, rather than discrimination after the filing of the administrative charge or the lawsuit. *See, e.g., Jenkins v. Wal-Mart Stores, Inc.,* 910 F.Supp. 1399, 1413–16 (N.D.Iowa 1995). However, discriminatory or retaliatory conduct after the filing of an administrative charge or judicial complaint is also actionable if it "grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *See Nichols v. American Nat'l Ins. Co.,* 154 F.3d 875, 887 (8th Cir.1998) (citing *Philipp v. ANR Freight Sys., Inc.,* 61 F.3d 669, 676 (8th Cir.1995)). Therefore, the "non-assistance"

incident is or may also be actionable as post-application retaliation that "grows out of or is like or reasonably related to" the allegedly retaliatory failure to hire on February 28, 1997. *Id.* Red Deer's continuing retaliation claim reasonably encompasses such conduct as having "grown out of" her complaints of discrimination in the County's hiring process.

In *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the Supreme Court held that former employees could assert post-employment retaliation claims under Title VII. *Robinson,* 519 U.S. at 346, 117 S.Ct. 843; *see also Smith v. St. Louis Univ.,* 109 F.3d 1261, 1266 (8th Cir. 1997) (citing *Robinson* to hold that Title VII's protections from retaliation extend to former employees). This court concludes that "post-application" retaliation claims should be considered according to the same standards courts have applied to "post-employment" retaliation, because the issue in both circumstances is whether the employer has retaliated against someone not currently employed by the employer for that person's complaint about a discriminatory employment decision. The key question under this standard is whether the alleged incident of post-application or post-employment retaliation is of a kind that falls within Title VII's prohibitions.

The Third Circuit Court of Appeals recently considered what kind of post-employment retaliation comes within the scope of Title VII in *Robinson v. City of Pittsburgh,* 120 F.3d 1286 (3d Cir.1997). In *Robinson,* the Third Circuit Court of Appeals noted that it had consistently required that retaliatory conduct rise to the level of a violation of Title VII. *Robinson,* 120 F.3d at 1300–01. The court also noted that in its prior precedent, it had concluded that Title VII " 'interdicts "an unlawful employment practice" rather than conduct in general which the former employee finds objectionable,' " and had rejected the plaintiff's assertion of a post-employment retaliation claim where "the allegedly retaliatory action 'had no impact on any employment relationship that [the plaintiff] had, or might have in the future.' " *Id.* at 1301 n. 15 (quoting *Nelson v. Upsala College,* 51 F.3d 383, 389 (3d Cir.1995)). The Third Circuit Court of Appeals explained further:

In *Charlton v. Paramus Bd. of Education,* 25 F.3d 194 (3d Cir.1994), [*cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994),] we held that a former employee could state a claim for retaliation arising out of post-employment conduct, so long as the retaliation affected the plaintiff's future employment opportunities. *Id.* at 200–01. We noted that retaliation claims have been permitted "where the retaliation results in discharge from a later job, a refusal to hire the plaintiff, or other professional or occupational harm." *Id.* at 200.

Although the instant case does not require us to resolve the issue, it appears from our decisions in *Nelson* and *Charlton* that a plaintiff who claims that the alleged retaliation prejudiced his or her ability to obtain or keep future employment would meet the standard we announce today by showing that the retaliatory conduct was related to his or her future employment and was serious enough to materially alter his or her future employment prospects or conditions. *See, e.g., Smith v. St. Louis University,* 109 F.3d 1261, 1266 (8th Cir. 1997) (negative references causing potential employers to decline to hire plaintiff constitute actionable retaliation).

*Robinson,* 120 F.3d at 1301 n. 15 (some internal citations omitted).

The evidence the County seeks to exclude tends to prove an incident that meets this standard for showing post-application retaliation. At the time of the "non-assistance" incident, Red Deer was working as a security guard, a job with an obvious relationship to or dependence upon the Sheriff's Department. Consequently, her inability to obtain assistance from the Sheriff's Department when circumstances required would indeed "prejudice[ ] ... her ability to obtain or keep" her employment as a security guard, because it would prejudice her ability to perform her job adequately. *Cf. Robinson,* 120 F.3d at 1301 n. 15. In other words, Red Deer's inability, as a security guard, to call upon law enforcement when circumstances required would be "related to" her employment and "serious enough to materially alter

... her future employment prospects or conditions." *Id.*

The court finds that the evidence of the "non-assistance incident" is relevant to—indeed forms part of the basis for—Red Deer's continuing post-application retaliation claim. FED.R.EVID. 401. Because the incident in question is potentially actionable as post-application retaliation itself and falls within the scope of Red Deer's retaliation claim, the court cannot find that the probative value of the evidence of that incident is outweighed by any prejudice to the County or potential for confusion of the jury. *See* FED.R.EVID. 403. Therefore, this evidence will be admissible at trial, FED.R.EVID. 402, and defendant's motion in limine will be denied.

### B. "After–Acquired Evidence" of Application Misconduct

■ The court finds that Red Deer's motion in limine, which seeks to exclude evidence of her prior employment records on the ground that such records were not considered by the County in making its decision not to hire her, must also be denied. In *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court considered the impact of "after-acquired evidence" of an employee's wrong-doing upon the relief the employee may obtain for discrimination by the employer. *See Carr v. Woodbury County Juvenile Detention Ctr.,* 905 F.Supp. 619, 622–25 (N.D.Iowa 1995). In general, after-acquired evidence of misconduct during employment or in an application for employment is relevant in a discrimination case as follows:

> In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern "for the relative moral worth of the parties," *Perma Mufflers v. International Parts Corp.,* [392 U.S. 134,] 139, 88 S.Ct. [1981,] 1984 [20 L.Ed.2d 982] [ (1968) ], but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing.

*McKennon,* 513 U.S. at 361, 115 S.Ct. 879; *see also Carr,* 905 F.Supp. at 622–23. Thus, as to prospective equitable relief, "as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy," because "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *Id.* at 362, 115 S.Ct. 879. The general rule for backpay, however, is less clear, *see Carr,* 905 F.Supp. at 623, although the Supreme Court offered the following guidance:

> The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. In determining the appropriate relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party. An absolute rule barring any recovery of backpay, however, would undermine the ADEA's objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from age discrimination.

*McKennon,* 513 U.S. at 362, 115 S.Ct. 879.

■ The one black letter rule established in *McKennon* is that where an employer seeks to rely upon after-acquired evidence of wrongdoing by the employee during his or her employment—and this court concludes where the employer seeks to rely on evidence of wrongdoing in the application process— the employer "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 362–63, 115 S.Ct. 879; *Carr,* 905 F.Supp. at 624. In the circumstances of the case now before the court, a failure-to-hire case not a discharge case, this court reads the rule to be that the County must first establish that the wrongdoing was of such severity that Red Deer in fact *would not have been hired* on those grounds alone if the County had known of the wrongdoing at the time of the decision not to hire her. *Cf. id.* In *McKennon,* the Court made clear that the

principles it was articulating applied with equal force in discrimination cases based on Title VII as well as in cases based on the ADEA. *Id.* at 357–58, 115 S.Ct. 879; *Carr,* 905 F.Supp. at 625. Thus, they are applicable to all of Red Deer's claims in this litigation, which include claims of race and sex discrimination in violation of Title VII and a claim of age discrimination in violation of the ADEA.

Whether or not the County can ultimately mount the hill to demonstrate that it would not have hired Red Deer because of misrepresentations of her past employment in her job applications, *see McKennon,* 513 U.S. at 362–63, 115 S.Ct. 879, the evidence Red Deer seeks to exclude is certainly relevant to the County's attempt to do so. Red Deer's argument that this evidence was not obtained by the County prior to its decisions not to hire her, played no part in the County's decisions not to hire her, and consequently is not relevant or probative of any issues in this case, simply misses the point. The question under *McKennon* is not whether the County actually relied on the evidence in making its decision, but what the County would have done had the evidence come to light at the time of Red Deer's applications. *Id.* Indeed, the Supreme Court was aware of Red Deer's concern, because it specifically noted that "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired [or not hired] for the nondiscriminatory reason." *Id.* at 360, 115 S.Ct. 879. The Court recognized that " 'proving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made.' " *Id.* (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 104 L.Ed.2d 268 (plurality opinion)). But the Court found that "[o]ur inquiry is not at an end, however, for even though the employer has violated the Act, we must consider how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered." *Id.* Thus, although not part of the County's decision-making process, the after-acquired evidence of Red Deer's alleged misrepresentations in her job application is nonetheless relevant to the question of remedies in this case. *Cf. id.*

Red Deer's final argument that nothing in her past employment rises to the level of "misconduct" sufficient for the County not to have hired her is also unavailing. The Fourth Circuit Court of Appeals has pointed out that where there is a genuine issue of material fact as to whether or not the employer would have terminated the employee for the misconduct in question, the district court errs in finding that the after-acquired evidence defense defined in *McKennon* applies as a matter of law, because the employer has not proved the "would have fired" requirement for raising the defense. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1240 (4th Cir.1995). This court finds this standard is also applicable to genuine issues of material fact as to whether the employer would not have hired an applicant because of after-acquired evidence of wrong-doing. Such genuine issues of material fact obtain here. Indeed, at least two genuine issues of material fact exist concerning the applicability of the defense here: First, it is for the jury to decide whether Red Deer's "misconduct" in her prior employment was such that the County would not have hired her on those grounds alone; second, the jury must also decide whether Red Deer made *misrepresentations* on her application, and whether those *misrepresentations,* irrespective of the seriousness of the "misconduct" they allegedly hid, were sufficiently serious in and of themselves that the County would not have hired her on that ground alone. *See McKennon,* 513 U.S. at 362–63, 115 S.Ct. 879. In these circumstances, the evidence of Red Deer's past employment is relevant to the availability and success of the County's after-acquired evidence defense, and is not unfairly prejudicial; consequently, it *would be* admissible, FED.R.EVID. 401, 402, 403, *if the County is allowed to assert its after-acquired evidence defense,* a question addressed in the next section.

### C. Availability Of The "After–Acquired Evidence" Defense

Although the court has concluded that the evidence of Red Deer's past employment records is relevant to the County's after-acquired evidence defense, there are concerns

that may nonetheless stand as impediments to the County's ability to raise such a defense at trial. First, the County had not pleaded that defense in this litigation prior to the filing of Red Deer's motion in limine and resistance to it, or indeed prior to the filing of the final pre-trial order. This concern, of course, begs the question of whether the after-acquired evidence defense is an affirmative defense that must be *pleaded* as well as *proved* by the defendant. If it is, the court must then consider whether it is appropriate to grant the County's oral request, made at the conference on December 30, 1998, to amend its answer to assert the defense. The answer to that question may in turn hinge on whether Red Deer is unfairly surprised by such a defense on the eve of trial, and whether any unfair surprise is curable.

### 1. "After-acquired evidence" as an affirmative defense

Scant case law considers whether "after-acquired evidence" is an affirmative defense that must be pleaded as well as proved by the defendant. Indeed, no court appears to have considered the question directly. For example, in passing, the Third Circuit Court of Appeals described *McKennon* as "address[ing] the doctrine of 'after-acquired evidence' and establish[ing] it as an affirmative defense that becomes meaningful once the plaintiff has established a *prima facie* case of discrimination." *McNemar v. Disney Store, Inc.,* 91 F.3d 610, 621 (3d Cir.1996), *cert. denied,* 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997). This court is unwilling to jump to the conclusion, based on an off-hand and conclusory observation in a non-binding decision—and furthermore an observation that was not even central to the analysis of the court making it—that "after-acquired evidence" is an affirmative defense. The court therefore looks first to the decision establishing the defense.

### a. McKennon

In *McKennon,* the Supreme Court clearly placed the burden of proving the "after-acquired evidence" defense upon the defendant. For example, the Court stated that "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, *it must first establish* that the wrongdoing was of such severity that the employee in fact would have been terminated [or not hired] on those grounds alone if the employer had known of it at the time of the discharge." *McKennon,* 513 U.S. at 362–63, 115 S.Ct. 879 (emphasis added). The Court did not, however, specifically identify the defense as an "affirmative" one, and said nothing whatever about the defendant's obligation to *plead* the defense. Unfortunately, more general guidance on what constitutes an affirmative defense is also sparse, but what suggestions this court has discovered are discussed in the next subsection.

### b. What constitutes an affirmative defense?

*i. Rule 8(c).* Rule 8(c) of the Federal Rules of Civil Procedure establishes the requirement that all affirmative defenses be pleaded and establishes a non-exhaustive list of what defenses fall within the scope of that pleading requirement:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.*

FED.R.CIV.P. 8(c) (emphasis added); *see also Sayre v. Musicland Group, Inc.,* 850 F.2d 350, 353 (8th Cir.1988) (noting that there are nineteen enumerated affirmative defenses, but that the list is "non-exhaustive," as it also includes "any other matter constituting an avoidance or affirmative defense"); *accord Brunswick Leasing Corp. v. Wisconsin Central, Ltd.,* 136 F.3d 521, 530 (7th Cir.1998) ("Fed.R.Civ.P.8(c) provides that 'a party shall set forth affirmatively [various enumerated defenses] *and any other matter constituting an avoidance or affirmative defense,*'" with emphasis supplied by that court). Thus, an affirmative defense within

the meaning of Rule 8(c) must " 'generally be pled or else [it] may be waived.' " *Stephenson v. Davenport Community Sch. Dist.,* 110 F.3d 1303, 1307 n. 3 (8th Cir.1997) (quoting *Bechtold v. City of Rosemount,* 104 F.3d 1062, 1068 (8th Cir.1997)); *Gray v. Bicknell,* 86 F.3d 1472, 1480 (8th Cir.1996) (an affirmative defense must be "raised in the pleadings or [it is] waived"); *accord Brunswick Leasing Corp.,* 136 F.3d at 530 ("As a general matter, an affirmative defense that is not timely pleaded is waived."); *Harris v. Secretary, U.S. Dep't. of Veterans Affairs,* 126 F.3d 339, 343 (D.C.Cir.1997) ("the language of Rule 8(c) itself requires that [an affirmative defense] be raised affirmatively in 'a pleading to a preceding pleading,' " quoting Rule 8(c), and noting that "[a]lthough the Rules do not explicitly mention waiver or forfeiture as the consequence of failure to follow Rule 8(c), it is well-settled that '[a] party's failure to plead an affirmative defense ... generally "results in the waiver of that defense and its *exclusion from the case,*" ' " quoting *Dole v. Williams Enters., Inc.,* 876 F.2d 186, 189 (D.C.Cir.1989), with emphasis in that decision, in turn quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278 (1990)); *Cooperative Fin. Ass'n, Inc. v. Garst,* 917 F.Supp. 1356, 1385 (N.D.Iowa 1996).

The purpose of the pleading requirement for affirmative defenses in Rule 8(c) "is to give the opposing party notice of the plea of [the affirmative defense] and a chance to argue, if he can, why the imposition of [the affirmative defense] would be inappropriate." *Blonder–Tongue Lab. v. University of Illinois Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (discussing the enumerated affirmative defense of estoppel); *Brunswick Leasing Corp.,* 136 F.3d at 531 ("the purpose of Rule 8(c) 'is to avoid surprise and undue prejudice to the plaintiff by providing [it] notice and the opportunity to demonstrate why the defense should not prevail,' " quoting *Venters v. City of Delphi,* 123 F.3d 956, 968 (7th Cir.1997)); *Harris,* 126 F.3d at 343 (finding the rationale of *Blonder–Tongue* also applicable to the pleading of the enumerated affirmative defense of statute of limitations). This rationale is particularly applicable to affirmative defenses "where a party may require notice and time not only to frame legal arguments, but to establish relevant facts that might affect the applicability of the [affirmative defense]." *Harris,* 126 F.3d at 343.

■ *ii. The "catchall" defenses.* However, "after-acquired evidence" plainly is not among the affirmative defenses specifically enumerated in Rule 8(c). *See* FED. R.CIV.P. 8(c). Where a defense is not one of the enumerated defenses, whether or not it comes within the ambit of Rule 8(c) depends upon whether it falls within the "catchall" for "any other" defenses. *See Sayre,* 850 F.2d at 353 (considering whether a defense not specifically enumerated in Rule 8(c), mitigation of damages, fell within the "catchall" of "any other matter constituting an avoidance or affirmative defense"); *accord Brunswick Leasing Corp.,* 136 F.3d at 530. As the Seventh Circuit Court of Appeals cogently observed, "The appropriate analysis for determining what falls into the 'any other' category is not well settled." *Brunswick Leasing Corp.,* 136 F.3d at 530.

In *Sayre v. Musicland Group, Inc.,* 850 F.2d 350 (8th Cir.1988), a diversity case, the Eighth Circuit Court of Appeals stated that "[t]he pleading of affirmative defenses is a procedural matter" to which federal rules of procedure apply. *Sayre,* 850 F.2d at 352. Therefore, in determining whether mitigation of damages was an affirmative defense that must be pleaded and proved, the Eighth Circuit Court of Appeals looked first to federal decisions, which had uniformly found mitigation of damages to be an affirmative defense that must be pleaded and proved. *Id.* Such guidance from federal decisions is lacking here.

Although the Eighth Circuit Court of Appeals observed that "[r]eference to state law can be helpful, but it is certainly not required when a federal court decides a purely procedural question," *id.,* the court also found that "[f]ederal courts typically consider state court decisions on burdens of pleading or proof before concluding that mitigation of damages is an affirmative defense." *Id.* Therefore, to the extent the Eighth Circuit Court of Appeals found state decisions were

relevant on what is an affirmative defense in a diversity case, it too looked to allocation of burdens of proof. *See id.* at 354–55.

Although the Seventh Circuit Court of Appeals seems to differ on whether, in diversity cases, state or federal law applies to the question of what is an affirmative defense, it appears to agree with our own circuit court of appeals on what state law should be considered, because it found that in diversity cases, "where 'Rule 8(c) does not specifically list an issue as an affirmative defense, resort to state law dealing with burdens of proof is the only logical method to ascertain the pleading character of a defense.'" *Brunswick Leasing Corp.*, 136 F.3d at 530 (quoting *Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 813 (7th Cir.1973)). According to the Seventh Circuit Court of Appeals, "[u]nder that approach, a defense is an affirmative defense if the defendant bears the burden of proof." *Id.*

The case now before the court is not a diversity case, but a federal question case. However, this court can think of no reason why allocation of the burden of proof, if it is the pertinent factor to be drawn from state decisions for determining what is an affirmative defense within the meaning of FED. R.CIV.P. 8(c) in a diversity case, should not also be a pertinent factor for determining what is an affirmative defense in a federal question case. Thus, to the extent *federal* cases establish the burden of proof for the defense in question here, the allocation of that burden of proof is relevant to the determination of what is an affirmative defense.

However, the Seventh Circuit Court of Appeals also noted other approaches to determining what is an affirmative defense within the meaning of Rule 8(c):

> In *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1377 (7th Cir.1990), also a diversity case, we reasoned that a defense was an affirmative one if it did not controvert the plaintiff's proof. And courts have used other analyses to determine whether a defense was within the scope of Rule 8(c). *See,* [5 Charles A. Wright & [Arthur R.] Miller, *Federal Practice and Procedure,* § 1271 (collecting cases).

*Brunswick Leasing Corp.*, 136 F.3d at 530.[1] As the Seventh Circuit Court of Appeals noted in *Brunswick*, the commentators Wright and Miller identified "other analyses" in the 1990 edition of their tome;[2] however, in their 1998 supplement, perhaps recognizing that discretion is the better part of valor, these commentators simply list defenses recognized as affirmative within the meaning of Rule 8(c) without any longer attempting to identify guiding principles for determining the scope of the rule. *See* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D, § 1271 (1998 Suppl.). The First Circuit Court of Appeals offers more guidance, applying a test similar to the Seventh Circuit's to the question of whether a defense falls within the "residuary" clause of Rule 8(c): The test in the First Circuit is "whether the defense 'shares the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to.'" *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir.1995) (quoting *Jakobsen v. Massachusetts Port Auth.*, 520 F.2d 810, 813 (1st Cir. 1975), and finding this test applied to ERISA pre-emption of state law claims); *Williams*

---

1. The court in *Brunswick Leasing Corporation* concluded that in the diversity action before it, it did not need to elect one rule or another, because the defense in question, "the multiple undisclosed principals rule," was not an affirmative defense, but merely part of the legal rule that permits some, but not all, undisclosed principals to enforce their agents' contracts. *Brunswick*, 136 F.3d at 530–31. The manner in which the defense came to light—through pleading and dispositive motions concerning the plaintiff's ability to state a claim—provided all the notice of the "defense" to which the plaintiff was entitled. *Id.*

2. The commentators formerly suggested that, in non-diversity federal cases, federal precedents and statutes suggested the criteria to guide the pleader included the "logical inference test"; the consideration of "policy," "fairness," and "probability"—the last factor in the triumvirate requiring the pleading of unusual circumstances; and consideration of the surprise and prejudice to the opposing party. *See* CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D, § 1271 (1990). However, they ultimately suggested that the defendant allege affirmatively any new matter he or she believed may not be embraced by the pleadings. *See id.*

*v.. Ashland Eng'g Co., Inc.,* 45 F.3d 588, 592 n. 7 (1st Cir.) (concluding that ERISA preemption is a "matter constituting an avoidance," and thus ordinarily comes within the ambit of Rule 8(c)), *cert. denied,* 516 U.S. 807, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995).

***iii. Summary of pertinent factors.*** Some of the sources that might otherwise have offered guidance on what is an affirmative defense are of little help here. This is not a diversity case, so state law can at best suggest general considerations that might be pertinent. *See Sayre,* 850 F.2d at 353. Federal case law is no more helpful, *cf. id.,* although the defense at issue here was established by the Supreme Court as a matter of federal law, because the Supreme Court did not have occasion to settle the question of whether the defense is an affirmative one that must be pleaded under Rule 8(c), and no other federal decisions are precisely on point. Furthermore, the statutes to which the defense applies, Title VII and the ADEA, of course do not identify the pleading requirements for the judicially-created defense at issue here.

However, the various authorities considered so far do suggest a number of factors that may be pertinent to the question of whether a particular defense is an affirmative one within the meaning of Rule 8(c). This court finds it unnecessary to select any one test of what constitutes an affirmative defense over another or to consider one suggested factor to the exclusion of others. This is so, because—at least in the absence of a definitive test from the Eighth Circuit Court of Appeals—perhaps the best manner in which the court can analyze the question of what constitutes an affirmative defense within the meaning of Rule 8(c) is to consider each of the suggested factors or tests.

 Therefore the court will consider here each of the following factors. First, the court will consider the allocation of the burden of proof, reasoning that if the defendant bears the burden of proof on the defense, it is an affirmative defense. *See Sayre,* 850 F.2d at 354–55; *Brunswick Leasing Corp.,* 136 F.3d at 530. Second, the court will consider whether the defense simply controverts the plaintiff's proof, *Brunswick Leas-*

*ing Corp.,* 136 F.3d at 530, or instead "avoids" the plaintiff's claim. *Williams,* 45 F.3d at 592 n. 7. To put it another way, the court will consider "whether the defense 'shares the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to,'" not simply controverted. *Wolf,* 71 F.3d at 449 (quoting *Jakobsen,* 520 F.2d at 813). If so, the defense is an affirmative one. Third, the specific purposes of Rule 8(c) must not be overlooked. Thus, the court should consider the need for notice of the defense to avoid surprise and undue prejudice to the plaintiff. *See Blonder–Tongue Lab.,* 402 U.S. at 350, 91 S.Ct. 1434; *Brunswick Leasing Corp.,* 136 F.3d at 531; *Venters,* 123 F.3d at 968. In determining whether such notice is required, the court should consider whether "a party may require notice and time not only to frame legal arguments, but to establish relevant facts that might affect the applicability of the [affirmative defense]." *Harris,* 126 F.3d at 343.

***iv. Application of the factors.*** The court now turns to application of these factors or analyses to the defense in question here. As to allocation of the burden of proof, *see Sayre,* 850 F.2d at 354–55; *Brunswick Leasing Corp.,* 136 F.3d at 530, the Supreme Court has made clear that the burden of proof on the "after-acquired evidence" defense is allocated to the defendant. *McKennon,* 513 U.S. at 362–63, 115 S.Ct. 879. Thus, under this test, the defense is an affirmative one that must also be pleaded pursuant to Rule 8(c).

The "after-acquired evidence" defense is also one that does not controvert the plaintiff's proof, *Brunswick Leasing Corp.,* 136 F.3d at 530, but instead "avoids" the plaintiff's claim, *Williams,* 45 F.3d at 592 n. 7, or at least *part* of the plaintiff's potential relief. As the Supreme Court explained in *McKennon,* the defense, if proved, limits the plaintiff's relief, generally precluding frontpay or reinstatement, and limiting backpay to the period from the date of the unlawful discharge or failure to hire to the date the new information was discovered. *McKennon,* 513 U.S. at 361–62, 115 S.Ct. 879. The defense has this effect irrespective of whether the

plaintiff proves discrimination or retaliation, because the Supreme Court explained that "[o]ur inquiry is not at an end," even if the employer has violated Title VII or the ADEA, because the courts "must consider how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered." *Id.* at 360, 115 S.Ct. 879. In other words, the "after-acquired evidence" defense " 'shares the common characteristic of a bar to the right of *recovery* even if the general complaint were more or less admitted to,' " *Wolf,* 71 F.3d at 449 (emphasis added) (quoting *Jakobsen,* 520 F.2d at 813), or the claim was otherwise in fact proved. The court is also persuaded that the fact that the "after-acquired evidence" defense is only a *partial* bar to recovery, not a complete bar, does not change the character of the defense as an affirmative one that must be pleaded and proved: The bar, although "partial," completely avoids certain kinds of recovery irrespective of proof of the plaintiff's claim.

Treating the "after-acquired evidence" defense as an affirmative one that must be pleaded and proved also is consonant with the purposes of Rule 8(c), because it is a defense for which the need for notice to avoid surprise and undue prejudice to the plaintiff is particularly apparent. *See Blonder–Tongue Lab.,* 402 U.S. at 350, 91 S.Ct. 1434; *Brunswick Leasing Corp.,* 136 F.3d at 531 (the purposes of Rule 8(c) include avoiding surprise and undue prejudice to the plaintiff); *Venters,* 123 F.3d at 968 (same). The "after-acquired evidence" defense is one for which a

plaintiff "require[s] notice and time not only to frame legal arguments, but to establish relevant facts that might affect the applicability of the [affirmative defense]." *Harris,* 126 F.3d at 343. For example, here, Red Deer must frame legal arguments concerning what constitutes a "misrepresentation" and what constitutes "misconduct" of sufficient gravity that it meets the *McKennon* standard of misconduct for which the County would not have hired her on those grounds alone. *See McKennon,* 513 U.S. at 362–63, 115 S.Ct. 879. She must also establish relevant facts concerning the applicability of the defense, including whether she did indeed make any "misrepresentations" and what were the actual circumstances under which she left the two jobs that are at the focus of the County's assertion of the defense.

■ Therefore, the court concludes that "after-acquired evidence" is an affirmative defense that must indeed be pleaded and proved pursuant to Rule 8(c).

### 2. *Leave to assert the defense*

Because the court concludes that "after-acquired evidence" is an affirmative defense that must indeed be pleaded and proved, the court must now consider whether the County waived or forfeited the right to assert the defense by failing to plead it sooner,[3] or whether it is appropriate to grant the County's oral request, made at the conference on December 30, 1998, to amend its answer to assert the defense.

---

**3.** The District of Columbia Circuit Court of Appeals has noted,

Although the courts appear uniformly to use the term "waiver" to describe the consequence of failure to plead an affirmative defense, the more precise term "forfeiture" better captures the courts' meaning: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *U.S. v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993).(internal quotation and citations omitted). Failure to plead an affirmative defense under Rule 8(c) constitutes failure to make a timely assertion of the defense. The failure to plead need not be intentional for the party to lose its right to raise the defense. The possibility of subsequent recovery of the defense through formal

or de facto amendment under Rule 15, see discussion *infra,* supports the conclusion that loss of the affirmative defense under Rule 8(c) constitutes forfeiture, not waiver. A Rule 15 amendment, if allowed by the trial court, will cure any problem of timeliness associated with forfeiture. However, if a party "waives," i.e., intentionally relinquishes or abandons an affirmative defense, no cure is available under Rule 15.

*Harris,* 126 F.3d at 343 n. 2. Although this court agrees with this fine distinction between waiver and forfeiture of an affirmative defense, it also recognizes not all courts do. Therefore, this court will refer to "waiver or forfeiture" of the after-acquired defense by the County, while recognizing that what is at issue is not an intentional relinquishment or abandonment of the defense, but untimely assertion. *Cf. id.*

#### a. The nexus between Rule 8(c) and Rule 15

The court recounted above the purpose of the pleading requirement for affirmative defenses established by Rule 8(c), *see Blonder–Tongue Lab.,* 402 U.S. at 350, 91 S.Ct. 1434; *Harris,* 126 F.3d at 343, and the particular importance of pleading affirmative defenses that require the framing of legal arguments and the establishment of relevant facts that might affect the applicability of the affirmative defense. *See Harris,* 126 F.3d at 343 (discussing the pleading requirement for the enumerated affirmative defense of statute of limitations). As the District of Columbia Circuit Court of Appeals has explained more fully,

> A party must make strategic decisions about how to proceed, and can plot its course adequately only if it can anticipate which issues will dispose of the case. Failure to raise an affirmative defense in pleadings deprives the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms. The structure of the Federal Rules therefore demands notice pleading of affirmative defenses as a crucial element of its overall conception of the progress of a lawsuit.

*Harris,* 126 F.3d at 343. Here, whether or not the County can establish the "after-acquired evidence" defense is crucial to the scope of Red Deer's recovery, and consequently Red Deer must make strategic decisions about how to proceed.

Even so, the District of Columbia Circuit Court of Appeals noted that "the Rules 'reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). That court found support for this characterization of the Rules in the provisions for amendment of answers to assert affirmative defenses, as well as amendment of complaints, in FED. R.CIV.P. 15. *Id.* at 343–44. However, that court also rejected the practice of various courts in permitting assertion of affirmative defenses without requiring an amendment of the answer by leave of court to assert such a defense. The District of Columbia Circuit Court of Appeals believed that such a practice could permit a party to leave out an affirmative defense for strategic reasons; improperly reduced the "multifarious" reasons for denying amendments stated in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), "to the single, non-exhaustive factor of prejudice"; and neglected the importance of notice of defenses for fairness reasons envisioned by Rule 8(c). *Harris,* 126 F.3d at 344–45. This court also embraces these concerns favoring pleading of affirmative defenses, because they ultimately serve the purposes of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination" of actions. *See* FED.R.CIV.P. 1.

■ Therefore, this court concludes that the full panoply of "multifarious" factors considered by the Supreme Court to determine whether to permit amendments is applicable to the question of whether to allow belated assertion of an affirmative defense. Indeed, Eighth Circuit precedent is not to the contrary, because in *Sayre,* the court also looked to Rule 15 and the decision in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), for the factors to consider in determining whether to permit amendment of an answer to assert a previously unpleaded affirmative defense. *Sayre,* 850 F.2d at 355; *accord Klipsch, Inc. v. WWR Tech., Inc.,* 127 F.3d 729, 732–33 (8th Cir.1997) (also applying the standards of *Foman* to the question of leave to amend an answer to assert an affirmative defense); *Zotos v. Lindbergh Sch. Dist.,* 121 F.3d 356, 360 (8th Cir.1997) (applying Rule 15(a)'s standard that leave to amend should be "freely given" to amendment of an answer to assert an affirmative defense). The Eighth Circuit Court of Appeals has also explained that the district court has the discretion to grant leave to amend a party's answer to assert an omitted Rule 8(c) defense. *Zotos,* 121 F.3d at 360.

#### b. Factors pertinent to leave to amend

In *Foman,* the Court identified the following factors to be pertinent to the determina-

tion of whether or not a court should grant a party leave to amend a pleading:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Klipsch, Inc.*, 127 F.3d at 732; *Zotos*, 121 F.3d at 360 (applying the "freely given" standard to amendment of an answer to assert an omitted Rule 8(c) defense); *and compare McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir.1998) (where the affirmative defense is "raised by the trial court" and " 'does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal,' " quoting *Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir.1976)). This court will therefore applies those factors here.

### c. Application of the factors

■ The County asserts that it only recognized the applicability of the "after-acquired evidence" defense quite recently, in November of 1998, when it received and examined Red Deer's past employment records. Furthermore, Red Deer has had some notice of the County's intention to assert such a defense, because the after-acquired evidence defense became an issue in the preparation of the parties' proposed final pre-trial order, which was ultimately filed on December 23, 1998. In response to the County's assertion of such a defense, Red Deer listed in the final pre-trial order witnesses who would be called if her past employment became an issue in the trial. The after-acquired evidence defense was also raised as the basis for admissibility of the employment records in the County's December 28, 1998, resistance to Red Deer's motion in limine. Nonetheless, the County did not plead the defense until the eve of trial, and then only orally, when this court raised the question of Red Deer's preparedness to meet an unpleaded defense that had only belatedly come to light.

The court concludes that there is no indication of dilatoriness or undue delay in the County's assertion of the "after-acquired evidence" defense after it learned of facts suggesting the availability of such a defense, and certainly the court finds no suggestion of an intent to surprise Red Deer with the defense. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227. Indeed, prior to this ruling, it could not have been clear to the County that *pleading* the "after-acquired evidence" defense as an affirmative defense was required by Rule 8(c). Shortly after the defense came to light, the County put the matter at issue in the preparation of the final pre-trial order and Red Deer was able to list some witnesses to counter the defense and to prepare her motion in limine regarding pertinent evidence. Furthermore, amendment to assert the defense certainly is not "futile," because the defense could stand as a bar to a substantial part of Red Deer's potential recovery, there is a legal basis for the defense, and there is some factual basis for the defense in the record. *See id.*

However, even though there was no intent to surprise Red Deer with the defense apparent from the record, the answer to whether the County may assert its after-acquired evidence defense still hinges on whether Red Deer is prejudiced or unfairly surprised by such a defense on the eve of trial. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227 (considering "undue prejudice to the opposing party by virtue of allowance of the amendment"); *McConathy*, 131 F.3d at 562 (considering surprise and prejudice; *and compare Brunswick Leasing Corp.*, 136 F.3d at 531 ("the purpose of Rule 8(c) 'is to avoid surprise and undue prejudice to the plaintiff' "). It may also depend upon whether any unfair surprise or prejudice is curable.

In this case, there would be unfair surprise or prejudice to Red Deer, even though she has some notice of the "after-acquired evidence" defense, if the court were simply to allow amendment of the answer now to assert that defense. This is so, because, as the court has observed, the defense is one requiring the plaintiff, as well as the defendant,

to "establish relevant facts that might affect the applicability of the [affirmative defense]." *Harris,* 126 F.3d at 343. Such preparation has not been possible here, because this case was scheduled for trial on January 4, 1999, and discovery has long since closed without the parties recognizing the need for or having the opportunity to develop facts that might affect the applicability of the defense.

However, just as surely as Red Deer is prejudiced by the tardy insertion of the defense into this litigation, any such prejudice is easily curable. The court has already advised the parties that the trial will be continued to allow further discovery pertinent to the applicability of the "after-acquired evidence" defense, and the court believes such a continuance will fully cure any prejudice to Red Deer while still recognizing the interests in equity the "after-acquired evidence" defense is meant to serve by permitting its consideration in this litigation. *See McKennon,* 513 U.S. at 361, 115 S.Ct. 879 (recognition of the effect of after-acquired evidence on remedies in a discrimination case is "to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing"); *see also Carr,* 905 F.Supp. at 622–23. The County's oral request for leave to amend its answer to assert the "after-acquired evidence" defense will be granted. As a consequence, however, trial in this matter will be rescheduled after the parties have had a reasonable opportunity to conduct discovery pertinent to the County's "after-acquired evidence" defense.

### III. CONCLUSION

As to the County's motion in limine, the evidence of the "non-assistance incident" is relevant to—indeed forms part of the basis for—Red Deer's continuing post-application retaliation claim. As such, it is admissible over the County's objections. Next, as to Red Deer's motion in limine, the evidence of Red Deer's past employment is relevant to the availability and success of the County's after-acquired evidence defense, and is not unfairly prejudicial; consequently, it is admissible, over Red Deer's objections, *if* the County is allowed to assert its after-acquired evidence defense.

Turning to that question, after consideration of pertinent factors, the court concludes that the "after-acquired evidence" defense is an affirmative defense within the meaning of FED.R.CIV.P. 8(c) that must be pleaded and proved by the defendant. Although that defense had not been pleaded in this case until the eve of trial, and insertion of such a defense into this litigation just days before trial and long after discovery has closed would unfairly prejudice Red Deer, any such prejudice is curable by continuing the trial and permitting discovery pertinent to the defense.

THEREFORE,

1. Defendant's "first" motion in limine, filed December 15, 1998, is **denied.** Evidence of the "non-assistance" incident will be admissible at trial.

2. Plaintiff's "first" motion in limine, filed December 18, 1998, is **denied.** Evidence of plaintiff's past employment records will be admissible at trial.

3. Defendant's December 30, 1998, oral motion for leave to amend its answer to assert the "after-acquired evidence" defense is **granted.**

4. Trial in this matter is **continued** until further order of this court to permit the parties to conduct discovery concerning the applicability of the "after-acquired evidence" defense.

**IT IS SO ORDERED.**